UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GULFSIDE, INC.,

    Plaintiff,

v.                                            Case No.:   2:19-cv-851-FtM-38MRM

LEXINGTON INSURANCE COMPANY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Gulfside, Inc.'s ("Gulfside") Motion to Compel Appraisal.  (Doc. 26). Defendant, Lexington Insurance Company ("Lexington") filed a response in opposition.  (Doc. 27).  Gulfside also filed a notice of supplemental authority in support of its Motion.  (Doc. 30). The matter is, thus, ripe.  For the reasons set forth herein, the Undersigned recommends that Gulfside's Motion to Compel Appraisal (Doc. 26) be **DENIED WITHOUT PREJUDICE**.

## BACKGROUND

As resolving Gulfside's Motion will turn on the facts leading to this dispute, the Undersigned first summarizes those relevant facts in both parties' briefings.  This matter is an insurance dispute between Gulfside and its commercial policy insurer, Lexington.  (Doc. 26 at 2).  Gulfside alleges it sustained covered losses on September 10, 2017 as a result of Hurricane Irma and that it promptly notified Lexington about the damage.  (*Id.*).  Lexington first met with Gulfside to inspect the property on September 22, 2017.  (Doc. 27 at 3).  After this initial inspection, both parties retained various experts to inspect the loss further and Gulfside represents that "each expert conducted numerous inspections (often in conjunction with the other party's expert) and produced multiple reports."  (Doc. 26 at 2; Doc. 27 at 3).

On May 2, 2018, Gulfside's public adjustor provided its letter of representation to Lexington and, based upon information available to Lexington at that time and its engineering report, Lexington issued a partial denial letter. (Doc. 27 at 3). Relevantly, Lexington states its May 11, 2018 partial denial letter represented that "the claim would remain open" and requested Gulfside provide "any additional information that may alter Lexington's position so Lexington could further evaluate the position." (*Id.*). According to Gulfside, Lexington determined that the wind damage to its parking lot and pool area was a covered loss but, based on Lexington's expert's reports, the amount of loss was below Gulfside's deductible. (Doc. 26 at 2). Gulfside also states Lexington denied Gulfside's claim for water damage. (*Id.*).

Lexington maintains that it did not hear again from Gulfside's public adjustor until November 2018. (Doc. 27 at 4). Meanwhile, disagreeing with Lexington's partial denial, Gulfside retained additional experts who continued inspecting the property as early as May 2018. (Doc. 26 at 3). On November 30, 2018, Gulfside's public adjuster informed Lexington to expect more information on Gulfside's claim. (Doc. 27 at 4). In a separate exchange of information, Gulfside's engineer produced a report to Lexington in January 2019 and Lexington alleges that this report assessed the damage to Gulfside's roof at $683,790. (Doc. 27 at 4). Lexington argues that Gulfside's engineer served this report "without any support or estimates for the roof contract amount," prompting Lexington to re-inspect Gulfside's roof in February 2019. (*See* Doc. 26 at 3; Doc. 27 at 4).

On April 3, 2019, Lexington contacted Gulfside's public adjustor to ask about the additional information the public adjustor stated was forthcoming back in November 2018. (Doc. 27 at 4). After Lexington did not receive this information, it again contacted Gulfside's public adjustor on May 3, 2019 to inquire when Gulfside would provide the information. (*Id.*).

Around the same time, Gulfside represents that it and Lexington reached a partial agreement on the causation and value of Gulfside's roof damages and the parties executed a partial proof of loss for the actual cash value of the roof damage. (Doc. 26 at 3).

Despite this partial agreement, the parties disputed the remaining losses and continued their investigations. Finally, on July 16, 2019, Gulfside's public adjustor provided a proof of loss statement from Gulfside valuing the remaining damage at $12,868,178.37. (Doc. 26 at 3; Doc. 27 at 5). Presented with this new amount, Lexington represents it then "sought re-inspection of the property, an examination under oath [("EUO")] and documents concerning the now $12,868,178.37 claim." (Doc. 27 at 5). Lexington further argues that Gulfside had a duty to comply with these requests as they were post-loss obligations under its policy. (*Id.*).

Gulfside, in contrast, argues that these requests were punitive and meant to prevent the parties from entering appraisal. Specifically, Gulfside argues that the public adjustor requested an appraisal at the same time the public adjustor presented the proof of loss form. (Doc. 26 at 3). Rather than move forward with appraisal, Gulfside alleges that Lexington refused and "retaliated with an August 6, 2019 letter seeking thirty-two categories of irrelevant documents and an equally onerous [EUO]." (*Id.* at 3-4). Gulfside maintains that it "diligently complied with all post-loss conditions and engaged in a voluminous information exchange with Lexington in an effort to resolve its claim." (*Id.* at 3).

For its part, Lexington argues that these requests were part of its ongoing claims adjustment and were a natural consequence of Gulfside's new $12,868,178.37 claim. (Doc. 27 at 5). As to the post-loss requests, Lexington represents that although it scheduled an initial EUO for September 30, 2019, Gulfside retained, and communicated through, counsel who informed Lexington this date would not work. (Doc. 27 at 5). After a back-and-forth exchange where the

3

parties could not agree on dates, Lexington unilaterally set an EUO for December 6, 2019 and the production of documents no later than November 20, 2019.  (*Id*.).  "Instead of complying with Lexington's requests," Lexington argues Gulfside "in direct contravention to the agreed upon policy provisions, filed suit on November 4, 2019, while the request for the examination under oath was pending."  (*Id*.).  Thereafter, Lexington denied Gulfside's remaining claims based on Gulfside's "failure to provide Lexington with the requested documentation and failure to appear for the examination under oath."  (*Id*. at 6).

While the parties present these facts in different order and disagree regarding the chronology, (*see, e.g.*, Doc. 26 at 7), the issue before the Court is clear:  Is Gulfside entitled to appraisal at this time or is the request premature?

## LEGAL STANDARD

In a diversity case, the substantive law of the forum state—in this case Florida—applies. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1020 (11th Cir. 2014).  "Under Florida law, a dispute regarding a policy's coverage for a loss is exclusively a judicial question." *Gonzalez v. Am. Sec. Ins. Co.*, No. 8:15-cv-1515-36EAJ, 2015 WL 12852303, at *4 (M.D. Fla. Nov. 10, 2015) (citations omitted).  "However, when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal." *Evanston Ins. Co. v. Etcetera, Etc Inc.*, No. 2:18-CV-103-FTM99MRM, 2018 WL 3526672, at *3 (M.D. Fla. July 23, 2018) (citations omitted).

Unlike that second scenario, "[a]n insured's compliance with post-loss obligations mandated in the policy raises a question of liability, not the value or amount of the loss." *Vintage Bay Condo. Ass'n v. Lexington Ins. Co.*, No. 2:18-cv-729-FtM-99CM, 2019 WL 211433, at *2 (M.D. Fla. Jan. 16, 2019) (citing *State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285,

4

1288 (Fla. 1996)).  Within the Eleventh Circuit, and among Florida state courts, there is abundant support for the proposition that "[a]ppraisal is premature when the insured fails to comply with an insurance policy's post-loss conditions."  *SB Holdings I, LLC v. Indian Harbor Ins. Co.*, No. 6:19-cv-668-Orl-40DCI, 2020 WL 1674326, at *1 (M.D. Fla. Jan, 9, 2020); *accord SB Holdings I, LLC v. Indian Harbor Ins. Co.*, No. 6:19-cv-668-Orl-40DCI, 2019 WL 5393993, at *2 (M.D. Fla. Sep. 13, 2019) (Report & Recommendation collecting cases); *see also Nalcrest Found., Inc. v. Landmark Am. Ins. Co.*, No. 8:18-cv-996-T-24AAS, 2018 WL 3293147, at *4-5 (M.D. Fla. July 27, 2018).  Stated differently, an "insured must comply with *all of the policy's post-loss obligations before the appraisal clause is triggered*."  *Nalcrest Found., Inc.*, 2018 WL 3293147, at *4 (emphasis in original; quoting *U.S. Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 471 (Fla. 3d DCA 1999)).

Thus, for Gulfside to compel appraisal it must first have satisfied its policy's post-loss requirements.

## ANALYSIS

Gulfside posits two main arguments:  (1) "[n]othing in [its] Policy predicates appraisal on the satisfaction of the insured's post-loss duties;" and (2) "Gulfside nonetheless recognizes that Florida case law suggests compliance beyond the Policy's express terms may be necessary" but that "Florida does not require absolute and unlimited compliance with every post-loss request an insurer may think to impose."  (Doc. 26 at 6).

Turning to Gulfside's first argument, that the performance of post-loss duties is not a condition precedent to compelling appraisal, the Undersigned looks to Gulfside's FL Surplus Lines Policy (# 41-LX-067988632-2/Form No. CP 00 17 10 12) (the "Policy").  (*See* Doc. 32-1).  The appraisal clause in the Policy reads:

5

> 2. Appraisal
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand [sic] for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> > a. Pay its chosen appraiser; and
> >
> > b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Doc. 32-1 at 52).[1]

Gulfside maintains that the "Policy's only condition for invoking the appraisal process is that 'Lexington and Gulfside disagree on the value of the property or the amount of loss.'" (Doc. 26 at 11). This position, however, ignores the rest of the Policy and critical context. For example, the appraisal provision cited above is found within Section E. of the Policy, titled "Loss Conditions." The subsection *immediately* following the appraisal clause reads, relevantly, as follows:

> 3. Duties In The Event Of Loss Or Damage [sic]
>
> > a. You must see that the following are done in the event of loss or damage to Covered Property:
> > . . .
> >
> > > (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records . . . and permit us to make copies from your books and records.

---

[1] The policy is written with "we" and "our" referring to Lexington and "you" referring to Gulfside.

6

>> b. We may examine you or any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this Insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed**.**

(Doc. 32-1 at 52-53).

Despite arguing that the Court should interpret the appraisal clause strictly, elsewhere in its Motion Gulfside concedes that "Gulfside nonetheless recognizes that Florida case law suggest compliance beyond the Policy's express terms may be necessary to ensure a fair resolution of a claim." (Doc. 26 at 7). The Undersigned finds that the persuasive authority cited above along with the express provision in Gulfside's Policy stand, together, for the proposition that Gulfside needed to satisfy these post-loss obligations before seeking appraisal.

The Undersigned also finds that Gulfside's second argument, that it substantially complied with those post-loss obligations (*see* Doc. 26 at 6-10), is premature at this time and more appropriately resolved on summary judgment or other appropriate pre-trial motion based on a more developed record than on a motion to compel appraisal because a dispute remains as to whether there is compliance with all post-loss obligations required under the Policy and adjudication of that issue would be potentially dispositive of all or part of the case. *See SB Holdings*, 2020 WL 1674326, at *1.

## CONCLUSION

Based upon the foregoing, the Undersigned **RESPECTFULLY RECOMMENDS** that Gulfside, Inc.'s Motion to Compel Appraisal (Doc. 26) be **DENIED WITHOUT PREJUDICE**.

**RESPECTFULLY RECOMMENDED** in Chambers in Ft. Myers, Florida on June 23, 2020.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties