UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO. 2:19-CV-00851-FTM-38MRM

GULFSIDE, INC.,

   *Plaintiff*,

v.

LEXINGTON INSURANCE COMPANY,

   *Defendant.*
_____/

## GULFSIDE, INC.'S RENEWED MOTION FOR PROTECTIVE ORDER

Plaintiff, Gulfside, Inc., pursuant to Fed. R. Civ. P. 26(c), moves this Court for a protective order as against Defendant, Lexington Insurance Company's First Request for Production because the burdensome document requests have no bearing on the limited issues raised by the pleadings.

## INTRODUCTION AND BACKGROUND

This action arises out of Lexington's refusal to proceed to appraisal pursuant to the terms of the Policy[1] it issued to Gulfside. Lexington improperly rejected Gulfside's appraisal invocation and thereafter demanded Gulfside's production of redundant and/or irrelevant documents. Lexington's unwarranted two-year delay in adjusting the claim and new document requests after appraisal was demanded are the basis for this litigation. Lexington has now cut-

---

[1] D.E. 3-1 at 29.

and-pasted its post-appraisal-demand requests[2] into its First Request for Production.[3] The document requests are identical to those that form the predicate for this litigation, save for the dates[4] and one deleted request.[5] Lexington did not draft its discovery request in compliance with the standards set forth in Rule 26 of the Federal Rules of Civil Procedure. Accordingly, Gulfside requests the Court's entry of a protective order from Lexington's First Request for Production.

## ARGUMENT AND MEMORANDUM OF LAW

### I. Lexington's Requests are Improper Under All Relevant Legal Standards.

The Federal Rules of Civil Procedure provide that "any party or any person from whom discovery is sought may move for a protective order," and that the Court, upon a movant's demonstration of good cause, may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "forbidding the disclosure or discovery" altogether. Fed. R. Civ. P. 26(c)(1)(A). The decision to enter a protective order is within the Court's discretion and does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985).

The "discovery rules do not permit [litigants] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006); *see also Melendez v. Mason*, No. 6:05-CV-1658-Orl-22DAB, 2007 WL 1471799, at *1 (M.D. Fla. May 21, 2007) ("Umbrella references to 'all' records of activity over a decade or two are characteristic of an improper fishing expedition, not permitted under the rules of discovery.") The scope of permissible discovery is governed by Rule

---

[2] D.E. 16-1 at 89.

[3] D.E. 28-1.

[4] Lexington's August 6, 2019 Letter requests documents from 2010 to 2018; Lexington's First Request for Production requests the same documents from 2010 through the present.

[5] Lexington's First Request for Production deleted only the thirty-second (last) category requested in the August 6, 2019 Letter: "Any other documents in support of [Gulfside's] claim that [Gulfside] would like Lexington to consider."

2

26, which allows discovery that is "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The December 1, 2015 amendment to the rule "[deleted] the former provision for discovery of relevant but inadmissible information (i.e., the phrase 'reasonably calculated to lead to the discovery of admissible evidence') because '[t]he phrase has been used by some, incorrectly, to define the scope of discovery.'" *Turco v. Ironshore Ins. Co.*, No. 2:18-CV-634-FtM-99MRM, 2019 WL 2255654, at *n. 5 (M.D. Fla. Mar. 4, 2019) (quoting Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2015 Amendment).

Discovery must also be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The proportionality requirement was added to Rule 26(b)(1) to "guard against redundant or disproportionate discovery" and "encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26(b)(1) Advisory Committee Notes to 2015 Amendment. "The proportionality analysis begins with a review of the actual claims and defenses in the case, 'and a consideration of how and to what degree the requested discovery bears on those claims and defenses.'" *Turco*, 2019 WL 2255654 at *4 (quoting *Koster v. Landmark Am. Ins. Co.*, No. 5:14-CV-689-OC-37PRL, 2016 WL 3014605, at *2 (M.D. Fla. May 20, 2016)).

Gulfside's Amended Complaint alleges two counts against Lexington: one for breach of contract for failing to pay owed depreciation on its undisputed roof claim, and another for declaratory relief compelling appraisal on the rest of the disputed damages.[6]

**The Breach of Contract Count:** The breach of contract count is narrow, factually and temporally. It focuses solely on Lexington's failure to pay the depreciation holdback on the already-repaired roof, after agreeing in writing, to do so. The elements of an action for breach of

---

[6] D.E. 32.

contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (citations omitted). In addition, "the claimant must…prove performance of its obligations under the contract." *4720 SE 15th Ave. LLC. v. AFCO Credit Corp.*, No. 219CV278FTM38NPM, 2019 WL 3997415, at *2 (M.D. Fla. Aug. 23, 2019) (quoting *Rollins, Inc.*, 951 So. 2d at 876).

Neither the existence of the contract (the Policy) nor the damages resulting from the breach (the amount of the depreciation on the roof claim) are at issue.[7] The only element in dispute is whether Lexington breached the Policy's RCV coverage clause when it failed to pay the agreed-upon depreciation. Lexington may dispute Gulfside's performance under the RCV clause (without factual basis to do so). Thus, the parameters for relevant discovery for the breach of contract claim are set by the Policy's RCV clause:

> (d) We will not pay on a replacement cost basis for any loss or damage:
> (1) Until the lost or damaged property is actually repaired or replaced; and
> (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

*See* Policy, Form No. CP 00 17 10 12, at p. 15. The only issues relevant to the breach of contract claim asserted is: (1) whether Gulfside repaired or replaced its roof, and (2) whether the roof repair or replacement was made as soon as practicable after the loss.

**The Declaratory Relief Count:** Gulfside also seeks a declaration compelling appraisal, so that the amount of the loss can be determined as per the Policy's clear language. This Court is not tasked with the intensive undertaking of deciding the scope or value of Gulfside's damages. The Florida Supreme Court mandates that "when the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, it is for the appraisers to arrive at the amount

---

[7] D.E. 9, ¶ 6; D.E. 28-2.

4

to be paid." *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) (approving *Gonzalez v. State Farm Fire & Casualty Co.*, 805 So. 2d 814 (Fla. 3d DCA 2000)'s holding that an insured's claim is appropriate for an appraisal panel—not a court—when the insurer admits that there is covered loss, the amount of which is disputed); *Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. 2d DCA 2014) ("[W]hen the insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal."). Here, Lexington admitted coverage for part of Gulfside's loss and made a payment on it. The two issues to be determined by the Court on the Declaratory Relief Count are: (1) whether a dispute exists between the parties as to the amount of the covered loss (it clearly does), and (2) whether Gulfside substantially satisfied its post-loss obligations prior to its invocation of the Policy's appraisal provision.[8]

## II. Lexington's First Request for Production Invokes the Need for a Protective Order.

### A. *The documents sought in Lexington's Request for Production are irrelevant and disproportional to the Breach of Contract Count.*

Lexington's discovery requests are irrelevant and disproportionate to Gulfside's claim for breach of contract. To prove breach, Gulfside must demonstrate performance of its obligations under the RCV clause and Lexington's failure to pay the RCV depreciation. Specifically, Gulfside must demonstrate that it: (1) it repaired its roof (which it did) and (2) made the repair as soon as practicable after the loss (which, again, it did). The voluminous pre-suit document exchange that transpired between the parties, much of which is now part of the record, is

---

[8] Florida does not require absolute and unlimited compliance with every post-loss request an insurer may think to impose. An insured sufficiently complies with its post-loss obligations when it engages with the insurer in a "meaningful exchange of information" such that the insurer has a reasonable opportunity to independently investigate the insured's claim. *Brickell Harbour Condo. Ass'n, Inc.*, 256 So. 3d 245, 248 (Fla. 3d DCA 2018); *State Farm Fla. Ins. Co. v. Cardelles*, 159 So. 3d 239, 241-42 (Fla. 3d DCA 2015).

dispositive as to both questions. After some negotiating about the value of the roof damage, the parties reached an agreement and Gulfside submitted an undisputed Actual Cash Value statement for the roof on May 31, 2019.[9] On June 3, 2019, Gulfside sent evidence of its completed roof repairs to Lexington and requested payment for the depreciation, pursuant to the Policy's RCV clause.[10] Lexington paid the ACV claim on June 20, 2019, but it ignored Gulfside's RCV request.[11] In November 2019, Gulfside's public adjuster had a call with Lexington's adjuster in an attempt to move the claim forward. Lexington's adjuster sent a follow up email confirming Gulfside's entitlement to the "undisputed monies due" for the depreciation and asking for the report that Gulfside sent over twelve months earlier.[12] Gulfside resent the report.[13] No response from Lexington was forthcoming (likely because Lexington's counsel intervened and is presently attempting to walk back its adjuster's admissions).

Lexington's requests for "any and all" reports, documents, emails, meeting minutes, maintenance logs, notices, newsletters, announcements, posters, quotes, bids, proposals, invoices, checks, photos, videotapes, budgets, financial statements, bank records, and cancelled checks dating back to January 2010 are manifestly irrelevant and disproportionate to the breach of contract claim and defenses.

---

[9] D.E. 9, ¶ 14; D.E. 28-2.

[10] Gulfside's June 3, 2019 Letter, attached as Exhibit A.

[11] D.E. 28-2.

[12] D.E. 15-1. ("Good Morning again, I misinterpreted payments that were made and thought the $77,000 payment was for the withheld depreciation, while in fact, it was the initial ACV payment. Once I receive you cooling tower report, I will request the remainder of the undisputed monies due.")

[13] D.E. 15-2.

### B. The documents sought in Lexington's Request for Production also have no bearing on Gulfside's Declaratory Relief Count.

The discovery Lexington seeks is irrelevant as a matter of law. Before the Court on the Declaratory Relief Count are two discreet issues, neither of which requires the Court to quantify Gulfside's damages or support production of the voluminous, redundant, and irrelevant (and arguably punitive) discovery requested by Lexington. After Lexington conceded coverage for part of Gulfside's claim, the quantification of Gulfside's covered loss became an issue for resolution exclusively through an appraisal panel. *Johnson*, 828 So. 2d at 1025. Lexington's requests for documents related to the scope and amount of Gulfside's claim are inappropriate as a matter of law.

The requests at issue here are virtually identical to those issued by other insurers through Lexington's counsel here.[14]  Addressing a nearly identical 30(b)(6) notice (propounded by the same counsel),[15] Magistrate Judge Becerra agreed that the blanket topic categories were not sufficiently tailored to the claims and defenses before the Court:

> THE COURT: I don't see how you are going to be entitled to discovery on damages, right, because that is just not where you're at in terms of damage to the property. I mean, that is not where you are at. That is not your affirmative defense. That is not what is before the Court, right? What is before the Court now is the coverage issue. And if there is no coverage because they failed to do the post loss remedies and the post loss duties, then there's no coverage. If there is still coverage because their failure on the post loss duties didn't prejudice you and/or they can argue that they, in fact, did comply to the Court on a summary judgment stage, I think that's what is before the Court. Like I said, I am not prepared to say that no discovery is appropriate, but it is -- I mean, we're talking apples and oranges here, right? Discovery as to the damages to the property is an

---

[14] Treasure Cay October 11, 2019 Letter, attached as Exhibit B.

[15] Defendant's Notice of Taking Plaintiff's 30(b)(6) Corporate Representative Deposition *Duces Tecum*, attached as Exhibit C. The issue in *Treasure Cay Condo Ass'n v. Frontline Ins. Unlimited Co.*, No. 4:19-cv-10211-KING/BECERRA (M.D. Fla. Aug. 10, 2020) is the same as it is here: the insurer refused a proper invocation of appraisal and then demanded—through the same law firm—identical voluminous document requests and examination under oath topics.

7

> issue for appraisal. This is a coverage case now. The Defendant has made it a coverage case.
>
> * * * *
>
> THE COURT: … what I want to hear about is what evidence you think is appropriate given what you need for your affirmative defenses. And like I said, I think you might need some stuff.
> MR. GETMAN: Right.
> THE COURT: I know, like I said, I didn't dig out the original 30(b)(6). I know it can't possibly be all those categories. And I suggested that initially and I am just telling you that now after having looked at the case in a lot more detail, it can't possibly be.
>
> * * * *
>
> THE COURT: …. Because the case at hand is not the damages that were suffered at Treasure Cay as a result of the hurricane. That is not the case at hand. Again, either one of you can correct me if I am wrong. I don't see that as being the case at hand. If that was the case at hand you would be at appraisal, right?
> MR. GETMAN: Correct, Your Honor. Your Honor is correct on that.

Transcript of Discovery Hearing at 11:2-22, 15:21-16:4; 20:18-24, *Treasure Cay Condo Ass'n v. Frontline Ins. Unlimited Co.*, No. 4:19-cv-10211-KING/BECERRA (M.D. Fla. Aug. 10, 2020) (No. 40), attached as Exhibit D.

The discovery is also not proportional to the Declaratory Relief Count or Lexington's defenses. It is undisputed that the parties presently disagree about the amount of the loss. Lexington was provided with a Sworn Statement in Proof of Loss, substantiated by Gulfside's multiple expert reports and estimates, and thousands of invoices documenting the claim. Lexington disagrees with Gulfside's experts. But not for lack of trying to arrive at an agreement – there were numerous inspections of the Gulfside property by both parties' representatives.[16] The failure to agree (and the appropriateness of appraisal) was acknowledged by Lexington's adjuster in November 2019:

---

[16] The inspections continued through September 2019, two years after the loss. *See*, *e.g.*, August 21, 2019 email from Dean Gutierrez confirming multi-day inspections of the insured property, and September 4, 2019 email exchange between counsel confirming that the inspections occurred, attached as Composite Exhibit E.

8

> Good Morning Brian,
>
> It was nice talking with you yesterday.
>
> I checked our system and payment for the roofing depreciation totaling $77,432.90 was issued on or about June 11, 2019. If this was not received, please advise and I will check to insure it was not cashed and if not, I will request that it be reissued.
>
> **Based on our conversation and review of the file, it appears that there are three open items; the replacement of the windows and doors, the replacement of the cooling tower and the stucco repair and painting of the exterior. Please forward your report (write up) on the cooling tower for the carrier's consideration.**
>
> **Can we agree that these items and only these items will be addressed at appraisal? If there is something else open, please let me know. I believe this would save time and enable us to get to the meat of the matter.**
>
> As discussed, I will ask defense counsel to follow up with Mr. Merino [*sic*] on the RFI that was sent to you.
>
> Please advise if you are at liberty to discuss settlement of this claim without going through the attorneys. I would like to talk about settlement options that may be available.
>
> Bob Wissman

*See* D.E. 15-1 (emphasis added). The pleadings evidence that the present litigation would not exist if Lexington agreed with Gulfside's valuation of the covered loss. The entirety of Lexington's Request for Production is thus irrelevant to the first prong of the appraisal analysis.

The narrow issue for this Court is whether Gulfside substantially satisfied its post-loss obligations then invoked appraisal. This is a backward-looking, time-specific inquiry: it requires the Court to determine whether Gulfside substantially satisfied its post-loss obligations in the period between the loss (September 10, 2017) and Gulfside's invocation of appraisal (June 16, 2019). The only documents relevant to Gulfside's substantial compliance are the communications between Gulfside and Lexington during the relevant time period leading up the

9

invocation of appraisal. A trier of fact will need to consider Lexington's inspections, the estimates exchanged, and the related communications about the claim, all of which are already in Lexington's possession. The documents sought in Lexington's First Request for Production pertain exclusively to Lexington's efforts to resist and/or minimize the quantification of Gulfside's claim. As Magistrate Judge Becerra correctly articulated, "[d]iscovery as to the damages to the property is an issue for appraisal." They have no bearing on the issues before the Court or what will be argued to a trier of fact. Allowing here the specific discovery Lexington propounded after appraisal was invoked would turn on their head the issues that caused this litigation and that directly led to Gulfside seeking this Court's intervention and relief.

## CONCLUSION

This discovery is irrelevant as a matter of law to the claims and defenses before the Court and fails to meet the proportionality standard set forth in the Federal Rules of Civil Procedure. Responding to it will only cause Gulfside "annoyance, undue burden and expense." Fed. R. Civ. P. 26(c)(1). Good cause exists for entry of a protective order as to all discovery currently sought by Lexington's First Request for Production. For the foregoing reasons, Plaintiff, Gulfside, Inc., respectfully requests that the Court grant its Motion for Protective Order, and for such other relief this Court deems equitable, just, and proper, including the attorney's fees and costs associated with this motion.

## CERTIFICATION OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), I hereby certify that counsel for the movant has conferred with all parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues and is authorized to represent that Lexington objects to the relief requested.

CASE NO. 2:19-CV-00854-FTM-38MRM

Respectfully Submitted,

VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996
305-577-3558 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr., Esq.**
Florida Bar No. 79170
**Allie C. Watson, Esq.**
Florida Bar No. 1019019
smarino@vpm-legal.com
awatson@vpm-legal.com
jpacheco@vpm-legal.com
*Counsel for Gulfside, Inc.*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on this 25th day of August 2020 on all counsel of record on the Service List below.

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**

## SERVICE LIST

Stephen A. Marino, Jr., Esq.
Allie C. Watson, Esq.
Ver Ploeg & Marino, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
Tel: (305) 577-3996
Fax: (305) 577-3558
smarino@vpm-legal.com
awatson@vpm-legal.com
jpacheco@vpm-legal.com
*Counsel for Gulfside, Inc.*

Melissa M. Sims, Esq.
Judith B. Goldstein, Esq.
Austin J. North, Esq.
Berk, Merchant & Sims, PLC
2 Alhambra Plaza, Suite 700
Coral Gables, FL 33134
Tel: (786) 338-2878
Fax: (786) 338-2888
msims@berklawfirm.com
dalvarez@berklawfirm.com
anorth@berklawfirm.com
kmendez@berklawfirm.com
jgoldstein@berklawfirm.com
eibarra@berklawfirm.com
*Counsel for Lexington Insurance Company*