EXHIBIT B

**EXHIBIT B**

# BERK, MERCHANT & SIMS
PLC

MELISSA M. SIMS
MSIMS@BERKLAWFIRM.COM

DIRECT LINE: 786.338.2878
DIRECT FAX: 786.364.1817

October 11, 2019

**Via E-Mail Only: bobbysims@keysclaims.com**
Treasure Cay Condominium Assoc., Inc.
c/o Bobby Sims
Keys Claims Consultants
Bayfront Professional Center
1333 3rd Avenue South, Suite 407
Naples, FL 34102

    Re:    Treasure Cay Condo Assoc., Inc.
           Policy No.:    FFC1-206297
           Date of Loss:    December 6, 2017
           Property Address:    130 Coco Plum Drive, Marathon, FL 33050
           Our Matter No.:    201904.0015

Dear Mr. Keys:

    Our firm represents Frontline Insurance ("Frontline") with respect to the above-referenced claim. We are writing in response to your written demand for appraisal of September 18, 2019, and presentation of the a Sworn Statements in Proof of Loss dated September 13, 2019 in the amount of $2,863,962.47. Please be advised that Frontline can neither accept nor reject the proof of loss at this time as Frontline's investigation is still ongoing. Additionally as Frontline's investigation is continuing, appraisal is premature.

    The policy requires the following:

### FLORIDA CHANGES – MEDIATION OR APPRAISAL
### (COMMERCIAL RESIDENTIAL PROPERTY)

**Mediation Or Appraisal**
If we and you:

           \*           \*           \*

**B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. They two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **2** of **10**

their differences to the umpire. A decision agreed to by any two will be binding.
Each party will:

1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

\*       \*       \*

**2.    Appraisal**
If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a. Pay its chosen appraiser; and
    b. Bear the other expenses of the appraisal and umpire equally.
If there is an appraisal, we will still retain our right to deny the claim.

**3.    Duties In The Event Of Loss Or Damage**

    **a.** You must see that the following are done in the event of loss or damage to Covered Property;

\*       \*       \*

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property, including quantities, costs, values and amount of loss claimed.

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **3** of **10**

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine you or any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this Insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

\*       \*       \*

Pursuant to the policy Frontline is scheduling your corporate representative for an Examination Under Oath ("EUO"). Please designate the Insured's corporate representative designated to testify and provide an EUO on the following issues:

1. The nature and extent of the damages sustained by the Insured and Additional Insureds and caused by Hurricane Irma.

2. The cost of repairing and/or replacing the building components damaged by Hurricane Irma.

3. The cause of the loss and damages which are the subject of this insurance claim.

4. The details of the claim set forth in your Sworn Statements in Proof of Loss (e.g. the items included in the Sworn Statements in Proofs of Loss, the dates of loss, the cause(s) of loss, the cost to repair or replace the items).

5. The individual locations of all windows or sliding glass doors which were lost or damaged due to Hurricane Irma (e.g. the unit number where each lost or damaged window/sliding glass door was located, and the room within which each lost or damaged window/sliding glass door was located), along with any interior damages being claimed within those units in this case.

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **4** of **10**

6. The factual basis for each and every component of the claim submitted to Frontline.

7. The installation history, maintenance history, and condition of all building components included in this insurance claim (e.g. windows, sliding glass doors, roof, stucco, siding, chillers, etc.) from the time of installation to the time of Hurricane Irma.

8. The maintenance and repair history of the building and building components included in this insurance claim (e.g. windows, sliding glass doors, roof, stucco, siding, chillers, etc.) from the time of installation to the time of Hurricane Irma.

9. Written and verbal communications with contractors, engineers or other persons or entities consulted or hired by the Insured regarding the areas and components of the building included in this insurance claim at any time, either before or after Hurricane Irma.

10. All statements, opinions, conclusions or recommendations made by any contractors, engineers or other persons or entities consulted or hired by the insureds regarding the areas and components of the building included in this insurance claim at any time.

11. The Insured's compliance with policy conditions, including Frontline's requests for inspection of the property, examination and copying of association books and records, examinations under oath etc.

12. The nature, substance and location of all condominium/association records relating to the areas and components of the building included in this insurance claim.

13. The Insured's record retention policy.

14. The history of officers and directors for the Insured from 2004 through the present.

15. All prior or other insurance claims made by or on behalf of the Insured and any claims presented by individual unit owners at the Insured Location.

16. All communications with or from contractors, engineers or other persons or entities consulted or hired by the Insured regarding the areas and components of the building included in this insurance claim at any time.

17. The amount the Insured is claiming from Frontline in this claim and the factual basis for same.

18. All communications between the Insured and their insurance agent(s) referring to any claims made, by Insured or any individual unit owners for property damage.

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **5** of **10**

19. Steps taken to mitigate the loss, and any documentation and costs associated with said mitigation.

20. The pre-loss condition of the Insured Location.

21. The status of any claim(s) submitted for flood related to Hurricane Irma including the scope and quantum of any such claim, the factual basis for each and every component of any such claim, all building components claimed as damaged within any such claim, etc.

The Insured's EUO is set as follows:

**Date:**        **DECEMBER 4, 2019**

**Time:**        **10:00 A.M.**

**Location:**    **Courtyard by Marriott Marathon Florida Keys**
                 **2146 Overseas Highway**
                 **Marathon, FL 33020**
                 **Tel: 305-289-2100**

If this date is unworkable, please contact my office as soon as possible with reasonable alternate dates for the completion of the examinations under oath. We advise that the EUO could take the better part of the day; therefore, please plan your day accordingly. ***Please advise us as soon as possible if an interpreter is needed.***

Additionally, please provide Frontline the following books and records, limited in time to 2010 through 2018.

1. All minutes and agendas of condominium association meetings, Board of Directors meetings, committee meetings, unit owner meetings, or special meetings.

2. All audiotapes, DVD recordings, electronic media or recordings in any other media of condominium association meetings, Board of Directors meetings, committee meetings, unit owner meetings, or special meetings.

3. All unit owner files for all units and all current or former owners at the Insured Location.

4. All complaint logs from 2010 to the present.

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **6** of **10**

5. All incident reports, notice of entry forms, security reports or log books for the Insured.

6. A copy of the Insured's articles of incorporation, or other documents creating any association, and any amendments to same.

7. All records and electronic media relating to maintenance or repair at the Insured Location, including, but not limited to, work orders, log books, complaints, correspondence, notices, invoices, estimates, proposals, bids, notes, memoranda, checks, and the like.

8. All quotes, bids, proposals or estimates, if written, and all written documentation in any form regarding any quotes, bids, proposals or estimates, if verbal, relied upon by the insured in submitting this insurance claim or received by the Insured in conjunction with this insurance claim.

9. All correspondence with persons or entities requested to provide quotes, bids, proposals or estimates in conjunction with this insurance claim.

10. All documentation and electronic media (including hard-drives, floppy drives, etc. of computers) which support the scope of any estimate or preliminary estimate and any unit prices included in any estimate or preliminary estimate, and/or which support any Sworn Statement in Proof of Loss submitted by the Insured with respect to this claim.

11. All records and electronic media relating or referring to the building components included in the insurance claim, including, but not limited to, correspondence, memoranda, reports, notices, contracts, proposals, estimates, invoices, and checks.

12. All expert or consultant reports, if written, and all written documentation in any form regarding any expert or consultant findings, conclusions or opinions, if verbal, relating to any aspect of this insurance claim.

13. All expert or consultant reports, if written, and all written documentation in any form regarding any expert or consultant findings, conclusions or opinions, if verbal, relating to the condition of any portion of the building or units.

14. Any and all documents, photographs, videotape, electronic media or other form of media, or other materials depicting or relating to any hurricane damage of any kind involving any building components included in this insurance claim.

Case 2:19-cv-00851-SPC-MRM   Document 40-2   Filed 08/25/20   Page 8 of 11 PageID 862

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **7** of **10**

15. Any and all photographs, videotape, electronic media or recordings in any other media depicting any damage to the building components or areas included in this insurance claim either before or after any Hurricane Irma.

16. Any and all correspondence, notices, newsletters, announcements, posters and postings to or from unit owners/occupants of the Insured Property relating or referring to the hurricane damage or this insurance claim.

17. Any and all correspondence, notices, newsletters, announcements, posters and postings to or from unit owners/occupants relating or referring to the condition, maintenance, repair or replacement of any part of the building.

18. All electronic media containing any correspondence, notices, newsletters, announcements, posters and postings to or from unit owners/occupants relating or referring to the condition, maintenance, repair or replacement of any part of the building.

19. All records relating to water extraction or drying involving any areas of the building.

20. All documentation to and from any insurance company or insurance personnel regarding any prior or subsequent property damage claims of any nature, including, but not limited to any claim for flood related to Hurricane Irma.

21. All budgets, financial statements, bank records and cancelled checks.

22. All records relating or referring to loans or special assessments.

23. All e-mail correspondence between any members of the Insured and the Additional Insureds' Board of Directors at any time relating or referring to the condition, maintenance, repair or replacement of any components of the Insured Property's buildings and building components.

24. All correspondence between or received by any members of the Insured and the Additional Insured's Board of Directors relating or referring to any insurance claims including, but not limited to, the subject insurance claim.

25. The entire file of any and all experts and consultants relating to this this insurance claim and any flood claim related to Hurricane Irma.

26. All correspondence and/or communications with all persons that inspected the Insured Property from January 1, 2010.

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **8** of **10**

27. All correspondence with any flood insurance carrier, plate glass carrier, boiler and machinery carrier, or any other insurance carrier or insurance personnel relating or referring to any loss or damage or any claim for loss or damage to the Insured Property.

28. All records relating or referring to any claim or potential claim presented or to be presented to any flood insurance carrier, plate glass carrier, boiler and machinery carrier, or any other insurance carrier, and/or relating or referring to resolution of that claim at any time, including but not limited to the policy and any estimates

29. All correspondence between the Insured and Additional Insureds and any of its unit owners and any homeowners' insurance carriers relating or referring to claims presented to any homeowners carriers for loss or damage to the building or any of the units at the Insured Property.

30. All permits, application for permits, notice of commencement, plans and specifications, inspection reports, evidence of final inspection and other building department document obtained and/or furnished to the building department.

31. All management reports.

32. Any other documents in support of your claim that you would like Frontline to consider.

We request that you provide our office with these documents on or before November 6, 2019. We also request that you bring all original documents with you to the scheduled EUO.

The information sought, through the request for documents and records and EUO, is necessary to allow the insurer to have all information needed to adjust your claim and evaluate its obligations under the policy of insurance. These are factors beyond the control of the insurer and within the control and discretion of the named insureds. Accordingly, your timely compliance with these contractual obligations is necessary to resolve the claim and precludes the initiation of a suit against us. Please be aware that Florida law requires an insured to cooperate with its insurer in the event of a claim. Thus, it is imperative that you participate in the EUO and provide access to the records detailed above.

Additionally, Frontline objects to Mr. Keys serving as the appraiser. The Frontline policy requires that the Insured must select a "competent and *impartial* appraiser." [Emphasis supplied] Keys Claims Consultants, Inc. ("KCC") has an agreement with the Insured which provides KCC a contingency of the recovery. Florida public records show George Keys is the President of KCC. Thus, the insured has

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **9** of **10**

appointed as its "impartial" appraiser the President of its assignee public adjuster to whom it has agreed to pay a contingent fee of insurance funds.

Black's Law Dictionary (10th Ed. 2014) defines "impartial" as "not favoring one side more than another; unbiased and disinterested; unswayed by personal interest." Similarly, Black's Law Dictionary (10th Ed. 2014) defines "disinterested" as "free from bias, prejudice, or partiality...not having a pecuniary interest in the matter at hand." Given that Mr. Keys and KCC have already served as an expert consultant for the Insured and stands to gain more money based on a contingency fee arrangement for work performed prior to the appraisal means that Mr. Keys and KCC by definition are neither impartial nor disinterested. V*erneus v. Axis Surplus Insurance Co.*, Case No. 16-21863-CIV, 2018 U.S. Dist. LEXIS 117005 (S.D. Fla. August 29, 2018). *See also Florida Guaranty Association v. Branco*, 148 So. 3d 488, 496 (Fla. 5th DCA 2014); *Tiger Fibers, LLC v. Aspen Speciality Ins. Co.*, 571 F. Supp. 2d 712, 717 (E.D. Va. 2008). Mr. Keys and Keys Claims Consultants, Inc. have a pecuniary interest in the outcome of the appraisal. *See Verneus v. Axis Surplus Ins. Co.*, No. 16-21863-CIV, 2018 U.S. Dist. LEXIS 117005 (S.D. Fla. July 13, 2018) (holding that the proposed appraiser who initially adjusted on behalf of the Plaintiff and had a contingency fee in place based on ultimate recovery in the case was not "impartial"); *Podolsky v. Federated National Insurance Company*, Case No. 502016CA008731XXXXMB (Fla. 15th Jud. Cir. May 15, 2017) ("An appraiser whose fee is based on the total amount of the loss has an interest in the amount of the loss, and therefore cannot be impartial."); *See also Nalcrest Foundation, Inc. v. Landmark American Insurance Company*, 8:18-cv-996-T-24AAS (M.D. Fla. July 27, 2018) ("[The insured's] appraiser is not impartial because he has a financial interest in the outcome of the appraisal."); *Shree Hari Hotels, LLC v. Soc'y Ins.*, No. 1:11-cv-01324-JMS-DKL, 2013 U.S. Dist. LEXIS 126658 (S.D. Ind. Sep. 5, 2013) ("It is axiomatic that an appraiser with a financial interest in the outcome of the appraisal is not impartial.") (citations omitted).

In a similar case out of the U.S. District Court in Colorado, an appraisal award was vacated and Mr. Keys were disqualified from serving as the insured's appraiser as Mr. Keys was determined to not be "fair and competent". *Colorado Hosp. Services Inc. v. Owners Ins. Co.*, 14-CV-001859-RBJ, 2015 WL 4245821 (D. Colo. July 14, 2015) In that case, Mr. Keys had a "direct material interest in the amounts determined by the appraisal process" due to his fee arrangement with the insured. *Id.* Furthermore, the court also found that "Mr. Keys' appraisal was so bereft of methodology and supporting evidence as to be completely implausible. This outcome, which the Court finds to have been a fundamentally unfair appraisal, can most likely be explained by Mr. Keys' partiality and material interest in inflating the outcome of the appraisal process. Accordingly...the Court finds that Mr. Keys' partiality had an articulable and demonstrable effect on the appraisal process." *Id.* Mr. Keys' expert opinions for the Insured prior to the appraisal process encompass the very issues he would be deciding as a presumptively neutral appraiser, which is clearly problematic.

Treasure Cay Condo. Association, Inc.
c/o George W. Keys
October 11, 2019
Page **10** of **10**

Furthermore, Mr. Keys and KCC's general advocacy for insureds would cause any reasonable person to question their impartiality. *See Church Mutual Insurance Co. v. Broadmoor Community Church*, Case No. 15CV32454 (D. Colo. May 15, 2018):

> "At some point, Mr. Keys decided that his business model would be to take an advocacy position for insureds who wish to hire him in insurance disputes. To be clear, on its face, there is nothing wrong with that in the marketplace. While there are many roles for Mr. Keys – possibly even as a retained or consulting expert witness in a court proceeding – those proceedings which are protected by the rights of discovery and cross-examination do not demand that the expert carry the mantle of 'impartiality' as required by in insurance disputes of this nature." *Id.*

Accordingly, in the event appraisal ever does become ripe upon completion of the investigation and upon a disagreement between the parties as to the value of the loss, the Insured must select an impartial appraiser that has no pecuniary interest in the matter at hand before appraisal may proceed. Mr. Keys and KCC have a strong monetary incentive to help the Insured achieve a greater recovery through the appraisal process, an incentive which certainly disqualifies Mr. Keys and KCC from serving as the Insured's appraiser in this matter.

The ongoing investigation is necessary to allow the insurer to have all information needed to adjust this claim and evaluate Frontline's obligations under the policy of insurance. We appreciate your cooperation as the investigation continues.

Frontline will continue to investigate this matter under a full Reservation of Rights as to all provisions of the insurance contract. Frontline does not waive any of the rights and defenses under the above named policy. The intent of this Reservation of Rights letter is to preserve the rights of all parties to this insurance contract and to permit completion of the adjustment of the claim, including the cause, origin, and scope of damages without regard to the liability of Frontline. We would like to highlight that this letter is not a declination of coverage, rather it is a notice that Frontline's investigation into your claim continues under a reservation of rights.

Frontline does not intend by this letter, the EUO, or any aspect of its investigation of your claim to waive any defenses. Frontline expressly reserves any and all rights, privileges and defenses held, pursuant to the subject insurance policy and under the laws of Florida.

We look forward to the Insured's cooperation with our requests and ask that you please do not hesitate to contact our office with any questions relating to this matter.

Sincerely,

Melissa M. Sims

MMS/da