E
X
H
I
B
I
T

D

**EXHIBIT D**

1           UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF FLORIDA
2
               Case No. 19-10211-CIV-JLK
3
TREASURE CAY CONDOMINIUM      )
4  ASSOCIATION, INC.,         )
                              )
5       PLAINTIFF,            )
                              )
6       -v-                   )
                              )
7  FRONTLINE INSURANCE UNLIMITED)
   COMPANY,                   )
8                             )
        DEFENDANT.            )   Miami, Florida
9                             )   March 19, 2020
   _____)
10

11    TRANSCRIPT OF TELEPHONIC DISCOVERY HEARING PROCEEDINGS

12       BEFORE THE HONORABLE JACQUELINE BECERRA

13           UNITED STATES MAGISTRATE JUDGE

14

15  Appearances:

16  (On Page 2.)

17

18  Reporter              Stephen W. Franklin, RMR, CRR, CPE
    (561)514-3768         Official Court Reporter
19                        701 Clematis Street
                          West Palm Beach, Florida 33401
20                        E-mail:  SFranklinUSDC@aol.com

21

22

23

24

25

```
 1    Appearances:

 2    FOR THE PLAINTIFF          Stephen A. Marino, Jr., ESQ.
                                 Ver Ploeg & Marino, P.A.
 3                               100 Southeast Second Street
                                 Suite 3300
 4                               Miami, FL 33131
      -and-
 5                               Allie C. Watson, ESQ.
                                 Ver Ploeg & Marino, P.A.
 6                               100 Southeast Second Street
                                 Suite 3300
 7                               Miami, FL 33131

 8    FOR THE DEFENDANT          Melissa M. Sims, ESQ.
                                 Berk, Merchant & Sims, PLC
 9                               2 Alhambra Plaza
                                 Suite 700
10                               Coral Gables, FL 33134
      -and-
11                               Laura C. Tapia, ESQ.
                                 Bared & Associates
12                               Madison Circle
                                 3191 Coral Way
13                               3rd Floor
                                 Miami, FL 33145
14
                                   *  *  *  *  *
15

16

17

18

19

20

21

22

23

24

25
```

```
 1          (Call to the order of the Court.)
 2          THE COURTROOM DEPUTY:  Case number 19-10211,
 3  Treasure Cay Condominium Association, Inc. versus Frontline
 4  Insurance Unlimited Company.
 5          Counsel please state your appearances.
 6          MR. MARINO:  Stephen Marino and Allie Watson on
 7  behalf of Treasure Cay.
 8          MS. SIMS:  Melissa Sims on behalf of Frontline.
 9          MS. TAPIA:  And Laura Tapia on behalf of Frontline.
10          THE COURT:  All right.  Good morning.
11          So I've got some good news and I've got some bad
12  news.  The good news is it looks like the teleconferencing
13  works and I've been able to have a number of hearings by
14  phone.  The bad news is that our computer system is down, and
15  I can't access the full court record.  So I have a number of
16  things with me that I've printed and have reviewed, so what I
17  propose that we go forward.  If I get stuck because you're
18  asking me to look at something that I either looked at already
19  but have it online, or that I haven't looked at and is online,
20  I'm kinda stuck.
21          So what I have in front of me -- maybe that's the
22  easier way to do it -- I do have Treasure Cay Condo's motion
23  to compel the appraisal; I have the defendant's first request
24  for products of documents; I have the proposed order on the
25  protective order; I have Treasure Cay's notice of authorities;
```

1    I also have Berk, Merchant & Sims' letters dated December 16th

2    and October 11th; I have Frontline's notice of authorities.

3    And so that's what I have printed in front of me.

4          I had reviewed the matter electronically, and I

5    looked at the docket and some other of the filings that have

6    been issued in this case.  So, again, I propose that we go

7    forward.

8          The one thing I'm a little unclear on is I know

9    that, from the proposed order, that there's the issue on the

10   protective order that plaintiffs are seeking, and I also have

11   the motion to compel appraisal.  I believe I had asked the

12   parties to set that and be prepared for argument on that, as

13   well, the issue of the protective order, but you all let me

14   know, because I don't have access to my notes, so . . .

15         MS. SIMS:  Your Honor, we're not prepared to go

16   forward with the motion to compel appraisal.  Our response is

17   due tomorrow.  We'd like it to be fully briefed.

18         THE COURT:  Okay.  Fair enough.

19         Sometimes what happens on Judge King's calendar is

20   that things are put, then they're referred to me, and then

21   I'll just set them down.  Looking at the docket, that might

22   not have been referred to me yet.  It may not be referred to

23   me.  I can't tell, because I can't open the docket sheet after

24   it.  But go ahead and fully brief that.  Like I said, I

25   printed it and I had reviewed it, but I know that you don't

```
1    have a response to that.

2              MS. SIMS:  Yes.

3              THE COURT:  All right.  So then we're on the

4    plaintiff's motion for protective order, then, and that's as

5    to defendant's request for productions 1 through 31 and the

6    first set of interrogatories 1 through 20; is that correct?

7              MS. SIMS:  That's correct.

8              MR. MARINO:  Yes, ma'am.

9              THE COURT:  All right.  So hold on a second, because

10   I have both the first request of production of documents

11   before me, as well as the interrogatories.  It doesn't sound

12   like we're going to be looking at -- going through these one

13   by one.  It's more of an argument as to whether or not there

14   should be full protection to responding.

15             So let me hear from the plaintiff first.

16             MR. MARINO:  Yes, Your Honor.

17             What brings us here is a Hurricane Irma claim, and

18   the history in a small nutshell is that Hurricane Irma caused

19   damage to Treasure Cay, which is a condominium association.

20   It's a relatively small association, has a very limited number

21   of units down in the Keys.  A claim was made.  Two years went

22   by where the parties did not agree as to the amount of loss,

23   and to this day they still don't agree as to the amount of

24   loss.

25             The insureds presented a sworn statement and proof
```

1    of loss and all their estimates for repair and said, since we

2    do not agree, let's go to appraisal; we're invoking the

3    appraisal provision.

4            In response, Lexington did what they do in a lot of

5    cases these days.  They said, no, we can't -- we're declining

6    your invocation of the appraisal process, which is not really

7    provided for under the policy, and now we want 33 categories

8    of documents and 31 topics for an examination under oath.  So

9    in response to a valid request for appraisal, because the

10   parties had, through their experts, through their estimates,

11   concluded they do not agree, Lexington turned around and said,

12   no, you have to -- we're going to impose this punitive vast

13   request for information going back 10 years.  We want all this

14   information.

15           And it's the same letter they send case, to case, to

16   case.  They send it in a lot of cases, regardless of its

17   validity.  It's particularly poignant here, where Lexington

18   has been provided and their counsel have been provided with

19   invoicing and documentation showing that, in fact, Treasure

20   Cay had gone through a major renovation in the year prior to

21   the storm, and they were just getting their renovation done

22   when Hurricane Irma struck.  So this isn't like a 20-year-old

23   or 30-year-old association, which, the insurance company chose

24   to insure after an inspection.  This is something that they

25   had just fixed up, and now it had a storm-related claim, and

1    in response to the invocation of appraisal, two-plus years

2    after the storm, Lexington decided to issue its punitive

3    letter of, we want an examination under oath with 31 topics,

4    we want these 33 categories or 32 categories of documents that

5    are every maintenance record, every e-mail, every --

6    everything that deals with anything about the property

7    structurally.

8           So this lawsuit arose because the Lexington

9    insurance company refused to go to appraisal, and we ask the

10   Court's determination.  We say we are uncertain of obligations

11   of the policy, we think we have substantially complied, and

12   there should be an appraisal, not have to go through this

13   giant, voluminous and unnecessarily imposing body of busywork

14   that has no real relevance to the appraisers going out and

15   deciding what part of the loss is covered and what part isn't.

16   The claim had not yet been denied.

17          What's happening now is in these cases like this,

18   Lexington is turning around and saying, well, you filed suit

19   to ask the Court -- and they remove it to federal court --

20   what your obligations under the policy, but in doing so, you

21   have declined to give in to our massive document request and

22   our massive EUO request, examination under oath request, so we

23   are going to deny -- we're going to deny coverage for you now

24   for the loss, even though you have otherwise a covered loss.

25          And in the process of trying to get the appraisal

1    ordered by the Court, Lexington, using the same lawyers who

2    wrote those letters, has picked up and cut and pasted those

3    requests into document requests and interrogatories and

4    advanced them, even though they are saying, there's no

5    coverage now, because you didn't comply, and even though they

6    are really not in any way limited in time and scope to the

7    issues which have been defined by the request for appraisal.

8           So we're objecting to Lexington essentially going in

9    a back -- through the backdoor to get the information that it

10   shouldn't get in the first place that is punitive and

11   burdensome in nature.

12          And it's not this Court's job to rewrite their

13   discovery requests for them.  So I've had many, many federal

14   magistrates say to defense counsel, if you're asking for 10

15   years, it's not my job to help you write it and say, I'll only

16   give you three years.  It's -- that's clearly plainly

17   unnecessary, overly burdensome.  Asking for every e-mail

18   between any unit owner about any structural issue in the past

19   10 years, or sometimes with no temporal limitation, is

20   inappropriate facially, and I'm going to sustain the

21   objection.

22          So that's why we are here, because Lexington is now,

23   in the face of what it's been doing to lead us here, saying,

24   fine, we'll just repackage those onerous demands that are the

25   subject of this lawsuit, and we'll package them as discovery

```
 1   requests and impose them on you as if they had validity.

 2            THE COURT:  So let me ask you a question.

 3            Is your position that no discovery is available

 4   because of the demands for appraisal, or is your objection

 5   that the scope of them is so broad that a protective order

 6   should be entered?

 7            MR. MARINO:  I can't say no discovery, but I think

 8   it has to be relative to the issues before the Court.  And

 9   this was part of our motion for protective order.  The issue

10   before this Court is should we go to appraisal or not.

11   Whether -- this Court is never going to go through the process

12   of quantifying the loss, so it is not germane to the issues

13   raised in litigation to say, we need you to give us all the

14   records that will help us essentially resist the loss.  We've

15   given them presuit the information necessary to quantify the

16   loss, they just don't agree with it, and they admit they don't

17   agree with it.  So what all this is is a basis -- all these

18   discovery requests, if you look through them, Judge, they're

19   just a basis to minimize or resist the merits of the claim,

20   the claim itself.  They are not going to the issues raised in

21   litigation, which is:  Should we go to appraisal; have the

22   policy holders, Treasure Cay, substantially complied with

23   their obligations to document their claim such that we should

24   go to appraisal.

25            So, so --
```

```
 1              THE COURT:  But you would agree that some -- but you
 2   would agree that some discovery is appropriate.  You're just
 3   saying this particular, what you call repackaging --
 4              MR. MARINO:  Right.
 5              THE COURT:  -- of what's in the EOU is not fair.
 6              All right.  Let me hear from the insurance company.
 7              MR. MARINO:  EUO.
 8              And if I could complete the thought, Judge.  Yes, I
 9   agree that if they asked for the correspondence with the
10   carrier that led to the EUO demand, which they already have --
11   there's nothing they can ask for that they don't already have,
12   really, but there may be some limited discovery focused on the
13   issues before the Court, not a repackaging, as you put it.
14              Thank you.
15              THE COURT:  I think you've -- I think you put it
16   that way, so, and I was using your verbiage, but . . .
17              MR. MARINO:  All right.  Okay.
18              THE COURT:  Let's --
19              MR. MARINO:  Okay.
20              THE COURT:  Maybe that's just the way I understood
21   it.  But let me hear from the insurance company.
22              MS. SIMS:  Yes, Judge.
23              With respect to the complaint, the complaint simply
24   says we should be compelled to appraisal.  It doesn't ask
25   anything about their rights to provide EUO, or documentation
```

 1  or inspections.  It just said that Frontline -- not Lexington,

 2  by the way; it's Frontline is the defendant in this case --

 3  either waived these requirements, or they've already complied.

 4  That's it.  Otherwise, it's just a straight complaint asking

 5  to compel appraisal.

 6      Frontline denied the claim based upon the failure to

 7  produce -- for an EUO and produce documents.  In addition --

 8  and that was raised as an affirmative defense.  In addition,

 9  Frontline raised defenses with respect to the actual damage to

10  the property, because the reason that Frontline has not

11  proceeded to appraisal is that it does not have a dispute as

12  to the amount of loss within the legal meaning of that term.

13  Because in Florida that term has a legal meaning, and that's

14  going to be expressed in the briefs that we file tomorrow with

15  respect to the compelling of the appraisal.

16      So the documents requests are similar to what was

17  done presuit, because ultimately the Court's going to have to

18  decide whether we're entitled to this information, and if so,

19  pursuant to the prevalent case law, then we should be able to

20  get the information in order to determine if there's a

21  disagreement.  Apparently, this property was undergoing

22  renovation.  We don't have documentation as to what repairs.

23  They say all the work's complete.  That documentation has not

24  been produced.  If they give us documentation that shows that

25  all the work has, in fact, been done and it can be related to

1   the hurricane, then maybe there won't be a disagreement, but

2   you can't make that determination before you get those

3   records.

4           Additionally, the examination under oath is

5   required.  It's quite clear under Florida law that they have

6   to do that.

7           So what Frontline did was say, okay, first you were

8   going to give us the information in the EUO, you decided not

9   to do it, and now you're suing to compel appraisal.  That's a

10  breach of the policy, the claim's denied as a whole now, and

11  it's up to the Court to decide whether or not you have

12  breached the policy.

13          And in addition to that we've raised affirmative

14  defenses.  The discovery is tailored to go to those

15  affirmative defenses.  I would concede that some of them may

16  be overbroad, and that's something that I would be willing to

17  work out with counsel to narrow the scope prior to having a

18  hearing before the Court, but what we were told was they don't

19  believe we're entitled to serve any discovery.

20          So it's not necessarily the scope and the years

21  that, you know, are being requested that can't be tailored

22  more, you know, carefully, but it's the fact that they're

23  saying we're not entitled to have any discovery on any of our

24  affirmative defenses raised.  We get to do discovery on the

25  affirmative defenses, as well as what's in the complaint.

```
 1              So that's Frontline's position.

 2         THE COURT:  Well, I --

 3         MR. MARINO:  And, Your Honor --

 4         THE COURT:  Okay.

 5         MR. MARINO:  Yeah, I need to correct some things.

 6              October 10, 2017, Frontline sends a letter to

 7    Treasure Cay saying, here's our estimate of your damages, it's

 8    below your deductible.  Over the next two years, or year and

 9    10 months, Treasure Cay gives them more documentation and

10    eventually submits a sworn statement and proof of loss under

11    the policy and the estimates and reports that support it.

12    When -- they also invoke appraisal.  Only after appraisal was

13    invoked did these document requests and EUO requests come up.

14    There was never an agreement to do it, then we changed our

15    minds.  And only after we sought, properly sought, the Court's

16    intervention to determine whether appraisal was appropriate or

17    if additional documentation had to be provided, only after

18    that, as further punishment, did Frontline deny coverage.

19         THE COURT:  Okay.  But let me interrupt you here,

20    because, I mean, the whole background of it, although

21    interesting, doesn't really come, I think, at issue, given

22    that you concede that some discovery is appropriate.  This is

23    not an argument where -- and correct me if I'm wrong or I

24    misunderstood it.  Your position is that not that, given the

25    posture of the case or given the legal arguments raised,
```

1    they're not entitled to discovery.  Your issue is that the

2    discovery that they've propounded you believe is too broad; is

3    that correct?

4              MR. MARINO:  That is generally correct.

5              And do I agree that you can, once suit is filed,

6    deny coverage and then make your coverage now at issue, when

7    it wasn't at issue when the suit was filed, and then use that

8    as a vehicle to say, now, we want all the discovery we were

9    trying to get before, I think that's improper.  We object to

10   that.

11             So I want to make sure that I'm clear on the caveat

12   to -- or the qualification to my understanding that if there

13   is something that goes to the Court needing, for its purposes,

14   to see in this litigation whether or not appraisal should be

15   attended, then, yes, that might be discoverable, although the

16   parties have all those communications already, but, okay.

17             But in terms of --

18             THE COURT:  But -- this is what I'm inclined to do,

19   because I just don't even think that the discovery per se is

20   ripe.  I don't think a motion for protective order that really

21   shields you from responding to all the discovery is

22   productive.  I think what needs to happen is the plaintiffs

23   have to respond to discovery.  Obviously in that response you

24   would object.  So if you have either legal objections to a

25   particular question, if the question is overly broad, if the

1   question is burdensome -- obviously I don't want to see

2   boilerplate objections, but that doesn't mean that, you know,

3   overly broad or burdensome is out the window either.  So I

4   think what the plaintiff is obligated to do, because there is

5   nothing to excuse you from discovery, is respond and then

6   confer.

7          Now, I've just heard the insurance company concede

8   that maybe some of these is too broad.  Maybe before you make

9   the plaintiff respond to these, you want to take another crack

10  at these and you want to, you know, start limiting them now.

11  But I think what needs to happen for the issue to even be ripe

12  before the Court is for plaintiffs to respond, then you have a

13  meet and confer you're required to do by the rules, and then

14  you can come back to me and say, okay, these are the -- maybe

15  we have to go through all of them one by one then, or not.

16  Maybe at that point 10 are at issue, six are at issue.  But I

17  don't think a blanket protective order is the right response

18  to what does appear facially, at least from my reading of

19  these document requests and interrogatories, some of them are

20  clearly too broad.

21          You're right, I'm not going to sit here and start

22  redrafting them all with you, but I think that's the job of

23  the parties.  So, again, if the parties want to confer now and

24  maybe address some of these -- I mean, by now, I don't mean

25  right now on this phone call.  I mean now, sort of now in sort

1    of the big picture sense, and you can withdraw some of these

2    requests or limit them outright.

3              For example, you know, the timeframe is a good

4    point.  Maybe that's one that you can knock out now.  But I

5    think the right thing is for the plaintiff, then to, again,

6    respond, object, and then it will be up to the insurance

7    company to come back, set it for hearing, to the extent that

8    they believe that the objections are either unfounded or the

9    objections were not well -- not well placed.  I don't think

10   it's the plaintiff's burden to do so.  I think the defendants

11   would have to come in and move to compel based on the

12   objections they have.

13             Now, they limit a lot of things, right?  Because if

14   some of these documents they already have, that might be your

15   response.  If your response is that they're overbroad because

16   it's a 10-year scope, but you're willing to provide a two-year

17   scope, then you do that, and there's no issue before the

18   Court.  But unless I hear or am convinced that there's some

19   reason to suggest that no discovery should be taking place, I

20   think discovery has to continue, and I think that's the right

21   mechanism for it to continue.

22             Plaintiff, what objections, if any, do you have to

23   proceeding in that fashion?

24             MR. MARINO:  I think -- I always want to respect

25   what the Court is saying, and I never want to be in a position

1   of, you know, overtly disagreeing with the posture.  I think

2   that the position that I'm being put in, though, is there are

3   33 requests that are -- and 31 interrogatories that are

4   facially objectionable, and I take the Court's statement to be

5   a caution to me that I have to be careful not to object based

6   on relevance and breadth.  When I look at a request asking for

7   10 years of any e-mails with unit owners about any damage

8   anywhere in the building, that's facially -- I would not under

9   any -- under normal circumstances seek to provide a

10  substantive response to that, because it's completely

11  irrelevant.  This is a hurricane (inaudible) --

12          THE COURT:  Yeah, but you would --

13          MR. MARINO:  The (inaudible) --

14          THE COURT:  Right.  But you would have a written

15  objection, right?

16          So the difference is --

17          MR. MARINO:  Okay.

18          THE COURT:  -- you would formulate a written

19  objection that says, this is irrelevant for these -- among

20  other things, these five reasons.  And then you have a written

21  objection.  They can move to compel, and then I'll hear you as

22  to why that's not relevant.  But I think from a procedural

23  posture I think that's the right way to go about it, because

24  otherwise, if I give you a motion for protective order, all

25  that's going to do is basically mean that the defendant is

 1  going to come back with a different request, right?  Because

 2  I'm not staying discovery or anything like that.  So I think

 3  the only way to move forward is to do that.

 4           What I don't want to see is a, you know,

 5  one-sentence boilerplate that says this is irrelevant, right?

 6  Those I typically frown on.

 7           MR. MARINO:  Understood, Your Honor.

 8           THE COURT:  So if you would say, this is irrelevant

 9  for these two reasons, this is overbroad because a 10-year

10  period is inappropriate, given the fact that, you know, the

11  hurricane was two years ago, that kinda stuff.

12           What I don't want to see is just that blanket cut

13  and paste.  And I don't like to see that, because it's really

14  unhelpful.  We have to move to a motion to compel.  But I

15  think if you -- you know, if you set out the reasons, it's

16  irrelevant for these two reasons, among others, it's overbroad

17  for these reasons, then the ball is back on the insurance

18  company to confer with you as to whether or not there are any

19  limitations that make sense.  And if you don't think there are

20  any limitations that make sense, then let them move to compel,

21  and then I'll hear it then.

22           MS. SIMS:  And as I stated, Your Honor, I'd be happy

23  to, you know, more narrowly tailor them before even the

24  objections are needed.

25           THE COURT:  Well, no, no, no.

```
1              MR. MARINO:  Right.  And that was the --

2              THE COURT:  No, no, no, no, no, no.  You can't do

3    that either, right?  So if you want to tailor them now before

4    he (inaudible) together --

5              MS. SIMS:  Yes.

6              THE COURT:  -- then you should do that, because

7    there's no point in having him draft an answer where you know

8    that you're already --

9              MS. SIMS:  Yes.

10             THE COURT:  -- sort of outside your scope here.

11             So I think the parties have to confer amongst

12   themselves.  If the defendants want to go ahead and pull --

13   withdraw these and submit new ones or submit ones that you

14   think are better tailored to the case, I encourage you to do

15   that, because it's going to save a lot of time and money on

16   both parts, right, for it to be done that way.

17             So neither of you have appeared before me before,

18   but typically what will happen here is if you come before me

19   on a motion to compel -- and, again, I'm just letting you know

20   this for both of your benefits, right?  If you come before me

21   on a motion to compel and it's an issue that you needed my --

22   you know, my decision-making, you needed me to look at, that's

23   great, that's what I'm here for.  But if I get the sense that

24   this is just some gamesmanship from either side, I'll award

25   fees to the other side.
```

```
 1            So I expect parties to work in good faith.  I expect

 2   parties to do the best they can to resolve these issues.

 3   That's what we're here for.  I don't expect the parties to

 4   agree, because if you all agreed on everything I'd be out of a

 5   job.  So I don't expect the parties to agree, but I do expect

 6   the parties to work in good faith and not to use the discovery

 7   process as a gotcha game or to use the discovery process to

 8   make the other side expend funds in an effort, right, to use

 9   that as a strategy for the case.  That I don't like to see.

10            So if you've put together these discovery

11   responses -- and I can tell you from looking at them they look

12   pretty boilerplate to me.  If you put together a bunch of

13   boilerplate responses, and then what you're going to get is a

14   bunch -- I mean, questions, and then what you get is pretty

15   much nothing, and you come to me for a motion to compel and

16   you haven't done the homework to really limit it, I'm not

17   going to take too kindly generally to those kinds of

18   arguments.

19            So like I said, today what's in front of me is a

20   motion for protective order.  I'm going to deny that without

21   prejudice.  I will expect that the parties will be able to

22   work this out.  If you can't work out your discovery

23   responses, then go ahead, use the discovery procedure.  Set it

24   down for another -- hopefully it won't be a telephonic, but if

25   it's a telephonic, it will be a telephonic, and I'll go
```

```
 1   through them on a motion to compel.  I think procedurally
 2   that's the right way to go about it.
 3           Again, just because I'm denying the motion to
 4   compel, I guess my message to the insurance company is that's
 5   not like a high-five, hey, you won the motion, right?
 6           MS. SIMS:  Understood.
 7           THE COURT:  But, yeah, I expect you all to work in
 8   good faith and to get this at least to a point so that if we
 9   do have a hearing, then I'm looking at finite issues or
10   particular issues that I can, you know, intelligently rule on.
11           So is there anything else on behalf of the
12   plaintiff?
13           MR. MARINO:  No, Your Honor.
14           THE COURT:  Okay.  How about on behalf of the
15   defendant?
16           MS. SIMS:  No, Your Honor.
17           THE COURT:  All right.  You all stay safe, and thank
18   you for appearing telephonically.  I don't love to do these,
19   but at least keep things moving, and I think to some extent we
20   all need to keep moving as best we can under the
21   circumstances.  So you all stay safe.
22           MS. SIMS:  Thank you, Your Honor.
23           MR. MARINO:  Thank you very much, Your Honor.
24           THE COURT:  Thank you.  Bye-bye.
25       (Proceedings concluded.)
```

```
 1                       * * * * *

 2                       I N D E X

 3    Telephonic Discovery Hearing                    3

 4                       * * * * *

 5                   E X H I B I T S

 6    (None.)

 7                       * * * * *

 8                     CERTIFICATE

 9        I, Stephen W. Franklin, Registered Merit Reporter, and

10    Certified Realtime Reporter, certify that the foregoing is a

11    correct transcript, to the best of my ability, from the

12    DIGITAL AUDIO RECORDING of proceedings in the above-entitled

13    matter.

14        Dated this 8th day of JULY, 2020.

15

16        /s/Stephen W. Franklin
          _____
17        Stephen W. Franklin, RMR, CRR

18

19

20

21

22

23

24

25
```