UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION
CASE NO. 2:19-CV-00851-FTM-38MRM

GULFSIDE, INC.,

*Plaintiff*,

v.

LEXINGTON INSURANCE COMPANY,

*Defendant*.

_________________________________________/

**GULFSIDE'S MOTION FOR SUMMARY JUDGMENT**

Gulfside, Inc., pursuant to Fed. R. Civ. P. 56 and M.D. Fla. L. R. 3.01, seeks an Order (1) determining that Lexington Insurance Company breached its policy by failing to remit the owed depreciation for Gulfside's undisputed roof claim and (2) compelling appraisal on the remaining disputed portion of Gulfside's claim.

This case arises out of a property damage dispute that should have never reached this Court. Gulfside sustained covered losses as a result of Hurricane Irma on September 10, 2017 and promptly notified Lexington. Lexington investigated the claim for eight months, during which time it sent out a field adjuster, an engineer, and a building consultant to inspect the property (all separately) on its behalf. Following its investigation, Lexington determined the loss was covered but was less than Gulfside's deductible.

In addition to conceding coverage for Gulfside's loss, Lexington informed Gulfside of its claim decision and provided the statutory notice for mediating the

claim, confirming under Florida Statute §627.7015 that it had a reasonable opportunity to investigate and render its claims decision. Gulfside disagreed with Lexington's estimate and immediately requested appraisal. That request was ignored. Gulfside assembled its own estimate of the damages, during which time it permitted Lexington to return and inspect the damage on two more occasions. A year later, the parties reached an agreement as to the amount of roof damage but continued to disagree as to the remaining $12 million in damages.

Aware that the parties' damage valuations were still millions of dollars apart and that Lexington had repeatedly inspected the property, Gulfside once again requested appraisal. At the time appraisal was requested, there were no outstanding post-loss requests or issues pending between the parties. In another effort to avoid appraisal, Lexington retained counsel and sent a letter claiming appraisal was unripe because it now needed—for the first time in the two years since the loss—over thirty categories of documents and an equally onerous examination under oath of the insured. This lawsuit followed.

Under Florida law, Lexington cannot avoid appraisal by manufacturing post-loss conditions after appraisal is invoked.[1] Appraisal is ripe where a dispute exists as to the amount of a covered loss and the insured substantially complied with the policy's post-loss conditions. Gulfside complied with all post-loss obligations, then

[1] *Costa Brava v. Certain Underwriters'*, Case No. 2019-0238371-CA-01 filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

(twice) properly invoked appraisal. To date, Lexington has conducted six[2] separate inspections of the property with multiple teams of experts and consultants. Lexington's claim that it has not had a sufficient opportunity to evaluate the claim is a thinly veiled attempt to escape appraisal in violation of the Policy and Florida law.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Lexington issued a commercial property policy, No. 41-LX-067988632-2/000, to Gulfside (the "Policy"). Policy [D.E. 3-1]; Lexington's Am. Answer and Affirm. Defenses [D.E. 33] at ¶ 6.

2. The Policy was in effect on September 10, 2017, the date of the loss. Policy [D.E. 3-1] at 7; Lexington's Answer and Affirm. Defenses [D.E. 9] at ¶ 6.

3. The Policy provided Replacement Cost Coverage for windstorm-related losses. Policy [D.E. 3-1] at 47; Lexington's Responses to Req. for Admission (Ex. 1).

4. To submit a claim for Replacement Cost coverage, the Policy provides:

> (c) You [the insured] may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us within 180 days after the loss or damage."
>
> (d) We [Lexington] will not pay on a replacement cost basis for any loss or damage:
>
> > (1) Until the lost or damaged property is actually repaired or replaced; and
> > (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

---

[2] Gulfside permitted Lexington to conduct a sixth round of inspections in September 2019, wherein Lexington had two teams of three experts (a licensed engineer, a window expert, and a building consultant) who spent four days at Gulfside jointly inspecting every unit at the property, with Gulfside and its experts.

Policy [D.E. 3-1] at 47.

5. The Policy also mandates appraisal if the parties disagree on the amount of loss:

> **Mediation Or Appraisal**
>
> If [Lexington] and [Gulfside]:
>
> * * *
>
> B. Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire… The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to an umpire. A decision agreed to by any two will be binding.

Policy [D.E. 3-1] at 29.

6. On September 10, 2017, Hurricane Irma struck Florida and caused significant damage to Gulfside. Mulcahy Dep. (Ex. 2) at 17:23-18:5; Gulfside's POL Package (Ex. 3).

7. On September 15, 2017, Gulfside reported the claim to Lexington. Warner Dep. (Ex. 4) at 15:14-24.

8. Under the terms of the Policy and Florida law, Lexington was obligated to conduct a fair and complete investigation of the damages to the property upon notice of Gulfside's claim. Policy [D.E. 3-1]; Boyle Dep. (Ex. 5) at 19:23-21:15; Boyle Rule 26(a)(2)(B) Report (Ex. 6) at 9.

9. On September 22, 2017, a field adjuster from Lexington, Dean Gutierrez, inspected the property. Lexington's Answers to Interrog. (Ex. 7) at 4, 6.

10. On October 26, 2017, a building consultant from JS Held, Michael

Campbell, inspected the property and completed a loss assessment in the course of Lexington's claim investigation. JS Held Estimate (Ex. 8); Lexington's Claim Determination [D.E. 26-1].

11. On February 7, 2018, an engineer from Engineer Design & Testing (ED&T) Corporation, Richard Stogran, P.E., also inspected the property and completed a loss assessment in furtherance of Lexington's investigation. 2018 EDT Estimate (Ex. 9); Lexington's Claim Determination [D.E. 26-1].

12. On May 11, 2018, Lexington issued a claim determination based on its (and its agents') investigation of Gulfside's loss and mailed it to Gulfside. Lexington's Claim Determination [D.E. 26-1]; Warner Dep. (Ex. 4) at 35:24-36:11.

13. In its claim determination, Lexington conceded that at least part of Gulfside's loss was covered, but concluded that it was only worth $532,973.37, which fell below Gulfside's $554,108.94 deductible. Lexington's Claim Determination [D.E. 26-1].

14. The same day, Lexington also sent a letter pursuant to Fla. Stat. §627.7015 advising Gulfside of its right to participate in mediation. Lexington's Mediation Notice (Ex. 10).

15. Gulfside disagreed with Lexington's quantification of the claim. Mulcahy Dep. (Ex. 2) at 137:14-138:4.

16. On April 19, 2018, Gulfside retained a public adjusting firm, Keys Claims Consultants, LLC ("Keys"). Keys Retainer [D.E. 24-4].

17. On May 21, 2018, Keys responded to Lexington's claim determination

and mediation notice *via* email requesting appraisal: "As you have offered Mediation, can we agree just to move forward with appraisal?" Keys May 21, 2018 Email Requesting Appraisal (Ex. 11). Lexington did not respond.

18. With its property in need of extensive repair and its Association in disagreement with Lexington's estimate, Gulfside retained a number of experts to inspect and evaluate the damage to the premises. Mulcahy Dep. (Ex. 2) at 35:24-37:18; Roof Leak Detection Report (Ex. 12); Moisture Intrusions Report (Ex. 13); Katerra Report (Ex. 14).

19. After learning of Gulfside's undertaking to evaluate its loss, Lexington sent its experts out to conduct additional inspections. Lexington's Answers to Interrog. (Ex. 7) at 4, 6-7; Warner Dep. (Ex. 4) at 33:8-10; 2019 EDT Report (Ex. 15).

20. In addition to its September 22, 2017 inspection by Mr. Gutierrez, its October 26, 2017 inspection by Mr. Campbell, and its February 7, 2018 inspection by Mr. Stogran, P.E., Lexington conducted inspections of Gulfside on September 11, 2018 and December 11, 2018. Warner Dep. (Ex. 4) at 33:8-10; Lexington's Answers to Interrog. (Ex. 7) at 4.

21. Gulfside provided Lexington with unfettered access to the property, including its books and records, upon every request and at each of these inspections. Mulcahy Dep. (Ex. 2) at 22:24-23:5; 49:25-51:4; 122:1-18; 128:6-15; 137:14-138-4.

22. In April 2019, Lexington and Gulfside reached an agreement as to the causation and value of Gulfside's roof damage, and Lexington emailed Gulfside an

undisputed Sworn Statement in Proof of Loss (the "Undisputed POL") on which Lexington had already entered the agreed Actual Cash Value, Replacement Cost Value, and Applicable Depreciation values—which were based on the findings of Lexington's experts—for the roof. Gutierrez April 30, 2019 Email (Ex. 16); Undisputed POL [D.E. 28-2].

23. Gulfside executed the Undisputed POL on May 31, 2019. Undisputed POL [D.E. 28-2].

24. On June 3, 2019, Keys sent the executed Undisputed POL and evidence of Gulfside's completed roof repairs to Lexington and requested payment for the depreciation, pursuant to the Policy's RCV clause. Keys' June 3, 2019 Letter [D.E. 40-1]; Gulfside's Am. Complaint [D.E. 32] at ¶ 14; Undisputed POL [D.E. 28-2].

25. Lexington paid Gulfside the Actual Cash Value listed on the Undisputed POL two weeks later on June 20, 2019. Gulfside's Am. Complaint [D.E. 32] at ¶ 14; Lexington's Answer and Affirm. Defenses [D.E. 33] at ¶14.

26. Though Lexington did not respond to Gulfside's depreciation request, it admits that depreciation was due to Gulfside once it received proof of payment to replace the roof. Warner Dep. (Ex. 4) at 56:15-56:21.

27. Gulfside's roof was replaced in 2019 and as soon as was reasonably possible. Mulcahy Dep. (Ex. 2) at 91:22-92:24; Certificate of Completion from the City of Naples Building Department [D.E. 47-1]; Final Waiver and Release of Lien [D.E. 47-1]; Rothring Dep. (Ex. 17) at 41:1-43:9.

28. The parties were unable to reach an agreement as to the rest of

Gulfside's damage, and, on July 16, 2019, Keys sent a letter to Lexington demanding appraisal on the remaining portion of Gulfside's claim. The appraisal demand enclosed a Sworn Statement in Proof of Loss ("POL") and 522 pages of reports, estimates, and invoices that substantiated Gulfside's valuation of its damages, including the RCV for its roof claim. Keys Appraisal Demand [D.E. 26-1]; Gulfside's POL Package [D.E.16-1]; (Ex. 3).

29. Keys requested that Lexington review the substantiating documentation and do one of two things pursuant to its obligations under the Policy: 1) If Lexington agreed with the POL, Keys requested that Lexington promptly issue payment; 2) If Lexington did not agree with the POL, Lexington was to consider the letter as Gulfside's formal written demand for appraisal. Keys Appraisal Demand [D.E. 26-1].

30. At the time appraisal was invoked by Gulfside, there were no outstanding requests for an EUO, documents, or any additional information or requests that would render appraisal unripe. Mulcahy Dep. (Ex. 2) at 22:24-23:5; 49:25-51:4; 122:1-18; 128:6-15; 131:2-138-4.

31. Under the terms of the Policy, Lexington was obligated to proceed to appraisal where Lexington and Gulfside disagreed as to the amount of the loss and either party made a written request for appraisal. Policy [D.E. 3-1] at 29.

32. Lexington did not remit any payment, full or partial, for the $12,868,178.37. Sims August 6, 2019 Letter [D.E. 16-3].

33. Lexington also refused to comply with Gulfside's request for appraisal.

Sims August 6, 2019 Letter [D.E. 16-3].

34. On August 6, 2019, Lexington responded, through counsel, to Gulfside's demand for appraisal. Instead of paying the POL amount or agreeing to proceed to appraisal, Lexington alleged that it could neither accept nor reject the POL because "Lexington's investigation [was] still ongoing." Sims' August 6, 2019 Letter [D.E. 16-3].

35. Pursuant to its letter, Lexington sought an examination under oath ("EUO") of Gulfside's corporate representative on over twenty topics. It also sought Gulfside's production of thirty-two categories of documents dating back to 2010. Sims' August 6, 2019 Letter [D.E. 16-3].

36. In a continued attempt to resolve the claim, Gulfside permitted Lexington to conduct another round of inspections in September 2019. Lexington brought in two teams of three (a licensed engineer, a window expert, and a building consultant) who spent four full days at Gulfside, with Gulfside and its experts, jointly inspecting every unit at the property. Warner Dep. (Ex. 4) at 35:6-9; Lexington's Answers to Inter. (Ex. 7) at 4.

37. Overwhelmed and frustrated by Lexington's lack of response and punitive voluminous requests, Gulfside retained the undersigned in October 2019.

38. On November 4, 2019, Gulfside filed its Complaint for Breach of Contract and Declaratory Relief Compelling Appraisal in Collier County, Florida Circuit Court. [D.E. 3].

39. On November 11, 2019, Lexington assigned a new adjuster, Robert

Wissman, to the Gulfside file. Wissman Dep. (Ex. 18) at 16:20-23; 9:15-20.

40. On November 19, 2019, Mr. Wissman confirmed *via* email that the depreciation payment for the Undisputed POL was due and would be issued immediately. He also discussed the parameters of damages to address at appraisal, indicating he agreed the claim was ripe for appraisal. Wissman Emails [D.E. 15-1].

41. A few days later on November 21, 2019, Lexington's attorneys attempted to retract Mr. Wissman's representations. Sims' Nov. 21, 2019 Letter [D.E. 24-12].[3]

42. Lexington denied Gulfside's claim four days after it removed this action to federal court, in retaliation for Gulfside bringing this action. Lexington's Claim Denial [D.E. 24-1]; Notice of Removal [D.E. 1].

43. On December 9, 2019, Lexington filed its Answer and Affirmative Defenses wherein it alleged that Gulfside had materially breached the policy by filing this suit. Lexington's Answer and Affirm. Defenses [D.E. 9] at 4-7.

## <u>LAW AND ARGUMENT</u>

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4]

---

[3] Gulfside filed a Notice of Confession of Judgment [D.E. 15] based on Mr. Wissman's e-mail conceding the RCV was owed and that the claim was ripe for appraisal.

[4] "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion

## I. SUMMARY JUDGMENT IS APPROPRIATE AS TO COUNT I BECAUSE APPRAISAL WAS RIPE AT THE TIME OF GULFSIDE'S APPRAISAL DEMAND.

Where an insurance policy's terms are clear and unambiguous, they must be given effect, as courts are not free to rewrite the terms of an insurance contract. *See Fla. Ins. Guar. Ass'n v. Somerset Homeowners Ass'n, Inc.*, 83 So. 3d 850 (Fla. 4th DCA 2011); *Beach Resort Hotel Corp. v. Wieder*, 79 So. 2d 659, 663 (Fla. 1955) ("[i]t is well settled that courts may not rewrite a contract or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain.").

Lexington's Policy is clear and unambiguous. It states that where the parties disagree as to the amount of the loss, either may request appraisal of the loss and, upon such a request, both parties "will" select an appraiser and proceed to appraisal. Policy [D.E. 3-1] at 29. (emphasis added). This is a mandatory appraisal clause; the parties must proceed to appraisal upon the written request of one party where, as here, there is a disagreement as to the scope of the loss. *Evanston Ins. Co. v. Etcetera, Etc Inc.*, No. 218-CV-103-FTM-99MRM, 2018 WL 3526672, at *4 (M.D. Fla. July 23, 2018) (appraisal mandated by the policy). Under the terms of the Policy, Lexington should have proceeded to appraisal, but refused and, in retaliation, denied Gulfside's claim instead.

---

for summary judgment. *Anderson*, 477 U.S. at 252. If the evidence offered by the nonmoving party is "merely colorable" or is "not significantly probative," summary judgment is proper. *Id*. at 249-50.

### A. The Legal Standard for Compelling Appraisal Requires a Covered Loss, a Disagreement, and Substantial Compliance with Post-Loss Conditions.

The Florida Supreme Court mandated that where there is a covered cause of loss, appraisal is the proper forum for the quantification of an insured's damages:

> [W]hen the insurer admits that there is a covered loss, but there is a disagreement on the amount of loss, **it is for the appraisers to arrive at the amount to be paid**. In that circumstance, **the appraisers are to inspect the property** and sort out how much is to be paid on account of a covered peril.

*Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021, 1025 (Fla. 2002) (emphasis added). There is no doubt that this is the case here. Lexington's May 11, 2018 letter states that its investigation "confirmed [past tense] evidence of direct physical loss and damage to the premises attributed to Hurricane Irma" and goes on to detail "the damage attributed to this Covered Cause of Loss", which Lexington alleged fell below Gulfside's deductible. Lexington's Claim Determination [D.E. 26-1] at 2 (emphasis added). Lexington also issued payment for the ACV of Gulfside's roof replacement. Lexington conceded coverage long ago, and the matter is ripe for appraisal of the disputed covered damages.

Where a court is tasked with whether to compel appraisal, "it must make a…determination as to whether the demand for appraisal is ripe." *Citizens Prop. Ins. Corp. v. Admiralty House, Inc.*, 66 So. 3d 342 (Fla. 2d DCA 2011) (emphasis added); *see also Citizens Prop. Ins. Corp. v. Mango Hill Condo. Ass'n 12 Inc.*, 54 So. 3d 578, 581 (Fla. 3d DCA 2011). Florida law is well-established that a claim is ripe for appraisal where: (1) the parties disagree about the value of a covered loss, (2) the insured

substantially complied with the policy's post-loss conditions, and (3) either party requests appraisal in writing. *Johnson*, 828 So. 2d at 1025. In the context of appraisal, a disagreement exists where the parties dispute the value of the damage after there was a fair opportunity to investigate the loss. *State Farm Fla. Ins. Co. v. Hernandez*, 172 So. 3d 473, 477 (Fla. 3d DCA 2015) ("[t]he goal of alternative dispute resolution is only furthered when the parties have each had a real opportunity to inspect the damages and the receipts to come to a reasonable estimate of the amount of the covered loss. Indeed, that is the entire reason post-loss obligations are included in the policy") (emphasis added).

**B. The Parties Disagree as to the Amount of the Loss.**

i. Gulfside Disagreed with Lexington's May 11, 2018 Damage Estimate.

Following an eight-month claim investigation, Lexington issued a claim determination wherein it concluded that Gulfside's Hurricane Irma damage was only $532,973.37, which fell below Gulfside's $554,108.94 deductible.[5] Within a week of receiving this correspondence, Lexington retained a public adjuster to help it communicate with Lexington and navigate the claim dispute process. The public adjuster immediately requested that Gulfside's loss be quantified by an appraisal panel.[6] When its 2018 appraisal request was ignored, Gulfside conducted its own evaluation of its loss.[7] The Parties ultimately reached an agreement on the amount of

[5] Lexington's Claim Determination [D.E. 26-1].
[6] Keys May 21, 2018 Email Requesting Appraisal (Ex. 11).
[7] Mulcahy Dep. (Ex. 2) at 35:24-37:18; Roof Leak Detection Report (Ex. 12); Moisture Intrusions Report (Ex. 13); Katerra Report (Ex. 14).

loss for the roof portion of the claim, but the remaining damages were still in dispute, despite Lexington's five inspections, review of documents requested and received from Gulfside, and communications with Gulfside's public adjuster.

Even after Lexington's retaliatory document and EUO requests in August 2019, Gulfside granted Lexington access to the property in September 2019 for another inspection. For four days, six Lexington experts met with Gulfside and its experts and combed the property together, ultimately crystalizing their differing opinions as to the quantification of the Hurricane Irma damage.[8]

ii. Lexington's Mediation Notice is Dispositive Evidence of a Dispute Requiring Appraisal.

The same day that Lexington sent its claim determination letter (May 11, 2018) stating that the claim fell below Gulfside's deductible, Lexington also sent a letter pursuant to Fla. Stat. §627.7015 advising Gulfside of its right to participate in mediation.[9] Lexington's May 11, 2018 letter is dispositive proof of the parties' disagreement.[10] Fla. Stat. §627.7015(7) provides that an insured is not required to participate in any contractual appraisal process unless the insurer complies with Fla. Stat. §627.7015(2) and notifies the insured of its right to mediation. Florida courts have held "the subsection 627.7015(2) notice requirement does not ripen until the insurer is on notice that there is a dispute between the insurer and the policyholder relating to a material issue of fact." *State Farm Fla. Ins. Co. v. Lime Bay Condo., Inc.*,

[8] Warner Dep. (Ex. 4) at 35:6-9; Lexington's Ans. to Inter. (Ex. 7) at 4.
[9] Lexington's Mediation Notice (Ex. 10).
[10] Lexington also conceded coverage of the claim when it issued partial payment. *Johnson*, 828 So. 2d at 1029.

187 So. 3d 932, 932 (Fla. 4d DCA 2016) (emphasis added); *see also People's Tr. Ins. Co. v. Lavadie*, 306 So. 3d 285, 290 (Fla. 3d DCA 2020) (same); *Castle Key Ins. Co. v. Fischer*, No. 1D20-1621, 2021 WL 972380 (Fla. 5d DCA Mar. 16, 2021) (same).

This is because §627.7015(2) must be read together with §627.7015(9), which provides that, "[f]or the purposes of this section, the term 'claim' refers to *any dispute between an insurer and a policyholder relating to a material issue of fact*…" Fla. Stat. §627.7015(9) (emphasis added).[11] Lexington's obligation to notify Gulfside its right to mediate "does not ripen until the insurer is put on notice that there is a dispute that relates to a material issue of fact." *Lime Bay Condo., Inc.*, 187 So. 3d at 932 (emphasis added). Lexington's transmission of the mediation notice dispositively confirmed that "the matter ripened into a 'dispute' within the meaning of the statutory requirement," which is sufficient to trigger the appraisal clause *Lavadie*, 306 So. 3d at 290.

**C. Gulfside Substantially Complied With Its Post-Loss Obligations.**

The undisputed material facts also confirm that Gulfside and Lexington engaged in an extensive and significant "meaningful exchange" of information and that Gulfside complied with all of its post-loss obligations up to the point of its second appraisal demand.

The Policy's post-loss obligations provide the insurer with an opportunity to conduct an investigation of the loss. An insured substantially complies when it

[11] §627.7015(9)(a)-(e) identifies five exceptions to §627.7015(9), none of which apply to the facts of this case.

engages with the insurer in a "meaningful exchange of information" such that the insurer has a reasonable opportunity to investigate the insured's claim, which is exactly what happened here. *Gonzalez v. People's Tr. Ins. Co.*, No. 3D19-646, 2020 WL 6153439, at *2 (Fla. 3d DCA Oct. 21, 2020) ("[W]hether the [insureds] *substantially complied* with their post-loss obligations once [the insurer] acknowledged coverage, or whether they totally failed to comply, is a disputed issue of fact and therefore summary judgment was improvidently granted.") (collecting cases) (emphasis added); *Naveen v. Universal Prop. & Cas. Ins. Co.*, No. 3D18-2148, 2020 WL 5033037, at *3, *7, n. 3 (Fla. 3d DCA Aug. 26, 2020) (the first step in *Estrada's* two-part analysis is for the trial court to "consider whether the insured complied or *substantially complied* with the terms of the insurance policy") (emphasis added) (citing *Am. Integrity Ins. Co. v. Estrada*, 276 So. 3d 905, 916 (Fla. 3d DCA 2019)); *State Farm Fla. Ins. Co. v. Cardelles*, 159 So. 3d 239, 241-42 (Fla. 3d DCA 2015).

Lexington made a claim determination eight months after the loss.[12] Once Lexington acknowledged that Gulfside retained its own experts to dispute the claim, Lexington sent out its teams for re-inspections, for which Gulfside again provided unfettered access. Lexington inspected the property on five separate occasions prior to Gulfside's second appraisal demand and hired its own experts and adjusters who have deemed the information gathered to date sufficient, as they have opined multiple times on the scope and amount of loss. Gulfside also provided Lexington

[12] Lexington's Claim Determination [D.E. 26-1].

with unlimited access to its books and records, submitted a Sworn Statement in Proof of Loss (even though none was requested), and produced all the documents requested of it prior to its demands for appraisal. The sufficiency of the information exchange was clear even to Lexington's adjusters: when Lexington assigned a new adjuster to the claim over two years after the loss, he promptly made a sincere, expedited effort to confirm that the parties were ready for appraisal. *See* Wissman's Emails [D.E. 15-1].

Lexington will likely argue that it had no time to evaluate Gulfside's claim because Gulfside submitted its POL simultaneously with its demand for appraisal, but this is a misrepresentation. Appraisal was first requested on May 21, 2018 and, when no response was received, Gulfside worked with Lexington and its experts to jointly evaluate the claim and confirm their disagreement as to the amount of the loss. Appraisal was then invoked again. Unlike the facts in *U.S. Fidelity & Guar. Co. v. Romay*, 744 So. 2d 467 (Fla. 3d DCA 1999),[13] where the insured notified its insurer over four years after receiving payment on its claim that it disputed the amount of the loss and provided only an unsworn damage estimate in support, the disagreement triggering the appraisal clause here is not "unilateral." At the time of Gulfside's (second) demand for appraisal, twenty months had passed since Hurricane Irma.

---

[13] The standard for an insured's substantial compliance with post-loss conditions was first discussed *Romay*. The Third District Court of Appeal confirmed the logical chronology of the appraisal clause: the insured must substantially comply with what is asked of it before it can seek appraisal. *Id*. at 1029. The *Romay* Court did <u>not</u> hold that policies require an insured's blind compliance with an insurer's unlimited invocation of post-loss obligations. *Id*. This point was confirmed in *Costa Brava, supra.*

Lexington had been out to the property on multiple occasions and were in frequent contact with Gulfside's public adjuster. During that time, Lexington had conceded coverage for one portion of the claim, denied coverage for another, and issued payment on a third—all without requiring an EUO or the documents requested in its August 6, 2019 letter ([D.E. 26-2]). Mulcahy Dep. (Ex. 2) at 137:14-138:4. Lexington and Gulfside also conducted another four days of joint property inspections in September 2019.[14] Any allegation that Lexington "had no meaningful opportunity to evaluate and investigate the claim"—or that an EUO is suddenly "necessary to adjust the claim"—is contradicted by Lexington's administration of the claim.[15]

**D. An Insurer Cannot Impose Post-Loss Obligations to Avoid Appraisal.**

Lexington argues that insurers should be able to impose post-loss conditions without limit or regard for an insured's proper appraisal demand. This draconian argument has no logical basis and is contrary to Florida law. A recent Florida decision, on all fours with the case at bar, highlights the boundaries for post-loss obligations. In *Costa Brava Condominium of Belle Isle, Inc. v. Certain Underwriters at Lloyd's London Subscribing,* No. 2019-023837, after the insured invoked appraisal and filed a Petition to Compel same, the insurer demanded (for the first time) twenty-three categories of documents and demanded an Examination Under Oath of the

[14] Warner Dep. (Ex. 4) at 35:6-9; Lexington's Ans. to Inter. (Ex. 7) at 4.

[15] At a minimum, the Court must conduct an evidentiary hearing to determine whether Gulfside has satisfied its post-loss obligations. *See Sunshine State Ins. Co. v. Corridori*, 28 So. 3d 129, 131 (Fla. 4th DCA 2010) (where an insured cooperates to some degree or explains non-compliance with a policy's post-loss requirements, a fact question is presented which should be resolved on an evidentiary hearing). On this record, however, Gulfside respectfully suggests that such a hearing is unnecessary.

insured. *See* Order on Motion to Compel [D.E. 35-1] at 4. The insurer (like Lexington) claimed those requests were outstanding, rendering the appraisal process pre-mature. *Id*. The court disagreed, finding that the requests were made after appraisal was invoked and after the insurer had years to investigate the loss. *Id*. The court found that "[i]n essence, [the insurers] [were] asking the Court to enforce newly-created post-loss obligations so that [the insurers] can avoid" appraisal. *Id*. at 5. Similar to *Costa Brava*, Lexington cannot impose new created post-loss obligations, namely a demand for an EUO and documents requests, to avoid appraisal.

The reasoning in *Costa Brava* is instructive here. Under Lexington's framework, the purpose and spirit of the insuring agreement would be "struck from the contract by way of judicial fiat, and bargained-for contractual terms" – *i.e.* those providing coverage for the insured's loss and appraisal in the event of a mutual disagreement – "would be rendered surplusage." *Romay*, 744 So. at 271. This is the inverse equivalent of the situation the *Romay* Court sought to prevent. And the interminable demand loop advocated by Lexington would be sheltered from judicial intervention if an insurer were permitted to deny coverage because an insured sought a judicial declaration of its rights.

The Southern District of Florida recently refused to permit such an imbalance in *Palm Bay Yacht Club v. Lexington Ins. Co.*, No. 18-23888-CIV-WILLIAMS/TORRES, 2019 WL 2255561, at *8-9 (S.D. Fla. Feb. 22, 2019).[16]

[16] For the Report and Recommendation and the Order adopting same, *see* [D.E. 53].

There, as here, the carrier sent a letter to the insured shortly after the loss indicating that "an investigation into the loss had been completed, and that the third party had made a final determination that the 'covered damaged to the building [fell] below [the] policy wind deductible.'" *Id*. When appraisal was invoked by the insured, the carrier argued that it "had no meaningful opportunity to evaluate and investigate" the claim. *Id*. The court rejected this argument, finding that "any such claim [by the carrier]…is directly contradicted by the letter sent from the third party administrator. Stated simply, [the carrier's] position is not supported by the facts." *Id*.

Another recent decision by the Third District Court of Appeal reversed a trial court's order denying appraisal where the undisputed facts were that "[the insurer] conceded coverage and [the insured] timely submitted his scope of loss estimate which disagreed with [the insurer's] scope of loss estimate." *People's Trust Ins. Co. v. Fernandez*, No. 3D20-82, 2021 WL 710473, at * 7 (Fla. 3d DCA Feb. 24, 2021). Holding that "any dispute on the amount of loss suffered is appropriate for appraisal" where an "insurer admits that there is a covered loss," the Third District reversed and remanded with instructions to stay the litigation and to compel appraisal. *Id*. Similar to *Fernandez,* the undisputed facts here show that Lexington conceded coverage for Gulfside's loss. Gulfside submitted its scope of loss estimate which disagreed with Lexington's estimate. Pursuant to *Fernandez,* this claim is ripe for appraisal as the parties dispute the loss and Frontline conceded coverage. *Id*.

The Policy's silence as to the time limit for measuring an insured's compliance with post-loss conditions does not indicate that a limit does not exist. Logic, Florida

law, and the purpose and spirit of the appraisal clause are clear that an insured's compliance must be judged at the time of the insured's demand for appraisal. The Policy does not contemplate the indefinite and abusive use of post-loss conditions to bar insureds from ever resolving a claim. The Third District Court of Appeal crafted the *Romay* compliance standard to give meaning to every term in the policy, and the same analysis must be applied here; once an insured engages in a meaningful exchange of information with its insurer, confirms a disagreement, and invokes its right to appraisal, the insurer cannot turn around and use the post-loss conditions to bar the insured from ever achieving redress.

## II. SUMMARY JUDGMENT IS APPROPRIATE ON COUNT II BECAUSE THERE ARE NO MATERIAL FACTS IN DISPUTE AS TO THE EXISTENCE OF THE CONTRACT, THE BREACH, AND THE DAMAGES.

Gulfside's breach of contract count is narrow, both factually and temporally. It focuses solely on Lexington's failure to pay the depreciation holdback for Gulfside's already-repaired roof. The elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) (citations omitted). In addition, "the claimant must…prove performance of its obligations under the contract." *4720 SE 15th Ave. LLC. v. AFCO Credit Corp.*, No. 219CV278FTM38NPM, 2019 WL 3997415, at *2 (M.D. Fla. Aug. 23, 2019) (quoting *Rollins, Inc.*, 951 So. 2d at 876). Gulfside has established all of these such that there is no genuine dispute of material fact as to Lexington's breach.

i. There is a Contract.

Lexington concedes in its Answer and Affirmative Defenses and numerous pleadings that the Policy existed and was in effect at the time of the loss.[17] This element is not in dispute.

ii. Gulfside Performed Its Obligations Under the Policy; Lexington Breached Them.

Gulfside's obligations for recovering depreciation are set forth in the Policy's RCV clause. Policy [D.E. 3-1] at 47. Thus, Gulfside has the burden of proving that it replaced its roof and did so as soon as reasonably possible after the hurricane. Gulfside has met its burden. Gulfside's corporate representative testified that the roof replacement took place in 2019. Mulcahy Dep. (Ex. 2) at 91:22-92:24. Gulfside—absent any request from Lexington—also produced its Certificate of Completion from the City of Naples Building Department [D.E. 47-1] and the Final Waiver and Release of Lien [D.E. 47-1] from its lender, which confirm the local government's approval and ratification of Gulfside's roof. Furthermore, Gulfside's public adjuster testified that the replacement was made as soon as reasonably possible. Rothring Dep. (Ex. 17) at 41:1-43:9.

The undisputed material facts confirm that after negotiating in early 2019, the parties reached an agreement about the value of the roof damage, and Lexington sent Gulfside the Undisputed POL for the roof—already filled out with the agreed

[17] Lexington's Answer and Affirm. Defenses [D.E. 9] at ¶6; Lexington's Am. Answer and Affirm. Defenses [D.E. 33] at ¶6; Lexington's Opp. to Motion to Compel [D.E. 27] at 2.

values.[18] On June 3, 2019, Gulfside sent Lexington the executed Undisputed POL and evidence of its completed roof repairs—per Gulfside's instructions and obligations under the Policy—and requested payment for the depreciation.[19] Lexington admits that it paid Gulfside's Actual Cash Value roof damage claim two weeks later on June 20, 2019.[20] Lexington's corporate representative also admitted that it did not respond to Gulfside's RCV request, and that Lexington is aware that it owes Gulfside the depreciation balance. Warner Dep. (Ex. 4) at 56:15-56:21.[21]

Lexington's breach is further proven by the actions of its adjusters. In November 2019, Gulfside's public adjuster had a call with Lexington's adjuster in an attempt to move the claim forward. Lexington's obligation was clear to its adjuster, who—after being newly assigned to the file and completing an independent review of it—sent an email to Mr. Rothring confirming Gulfside's entitlement to the "undisputed monies due" for the depreciation.[22] Lexington's subsequent (and punitive) failure to pay the depreciation holdback is a breach of the Policy.

iii. Damages Flow From Lexington's Breach.

Lexington cannot legitimately dispute the damages resulting from its breach. Lexington—not Gulfside—prepared the Undisputed POL reflecting the agreed value

[18] Gutierrez April 30, 2019 Email (Ex. 16).
[19] Keys June 3, 2019 Letter [D.E. 40-1].
[20] Gulfside's Amended Complaint [D.E. 32] at ¶ 14; Lexington's Answer and Affirmative Defenses [D.E. 33] at ¶14.
[21] Lexington's corporate representative also confirmed that the insurer owes the agreed depreciation regardless of increased costs for upgrades. Warner Dep. (Ex. 4) at 57:24-58:15.
[22] D.E. 15-1. ("Good Morning again, I misinterpreted payments that were made and thought the $77,000 payment was for the withheld depreciation, while in fact, it was the initial ACV payment. Once I receive you cooling tower report, I will request the remainder of the undisputed monies due.")

of Gulfside's loss. Lexington paid only the Actual Cash Value of the claim, despite knowing that Gulfside had RCV coverage. And Lexington's adjuster tried to immediately remit the depreciation (before Lexington's counsel got involved).[23] Gulfside paid premiums for RCV coverage but did not receive the benefit of its bargain, and its damages (calculated by Lexington) flow from that breach.

## CONCLUSION

The parties dispute the amount of the loss, the insured complied with the post-loss obligations, and the insured properly invoked appraisal; it is plainly for the appraisers to arrive at the amount to be paid. *Johnson*, 828 So. 2d at 1025. Nor can Lexington point to evidence negating existence of the Policy, the completion or timeliness of Gulfside's roof replacement, or the damages flowing from the breach. Appraisal should be compelled as a matter of law, and summary judgment should be granted in Gulfside's favor.

WHEREFORE, Plaintiff, Gulfside, Inc., respectfully requests that the Court enter an Order granting judgment in its favor and against Lexington Insurance Company, and for such other relief this Court deems equitable, just, and proper.

Respectfully Submitted,

VER PLOEG & MARINO, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
305-577-3996 /305-577-3558 *facsimile*

/s/ Stephen A. Marino, Jr.

[23] Gutierrez April 30, 2019 Email (Ex. 16); Undisputed POL [D.E. 28-2].

**Stephen A. Marino, Jr., Esq.**
Florida Bar No. 79170
**Arya Li, Esq.**
Florida Bar No. 58847
**Allie C. Watson, Esq.**
Florida Bar No. 1019019
smarino@vpm-legal.com
rwimbush@vpm-legal.com
ali@vpm-legal.com
awatson@vpm-legal.com
jpacheco@vpm-legal.com
*Counsel for Gulfside, Inc.*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on this 7th day of May 2021 on all counsel of record on the Service List below.

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**

## SERVICE LIST

Stephen A. Marino, Jr., Esq.
Rochelle N. Wimbush, Esq.
Allie C. Watson, Esq.
Ver Ploeg & Marino, P.A.
100 S.E. Second Street, Suite 3300
Miami, FL 33131
Tel: (305) 577-3996
Fax: (305) 577-3558
smarino@vpm-legal.com
ali@vpm-legal.com
awatson@vpm-legal.com
jpacheco@vpm-legal.com
*Counsel for Gulfside, Inc.*

Melissa M. Sims, Esq.
Judith B. Goldstein, Esq.
Austin J. North, Esq.
Berk, Merchant & Sims, PLC
2 Alhambra Plaza, Suite 700
Coral Gables, FL 33134
Tel: (786) 338-2878
Fax: (786) 338-2888
msims@berklawfirm.com
dalvarez@berklawfirm.com
anorth@berklawfirm.com
kmendez@berklawfirm.com
jgoldstein@berklawfirm.com
eibarra@berklawfirm.com
*Counsel for Lexington Insurance Company*