# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

GULFSIDE, INC.,

    Plaintiff,

v.                                              Case No: 2:19-cv-851-SPC-MRM

LEXINGTON INSURANCE
COMPANY,

    Defendant.
_____/

## **OPINION AND ORDER**[1]

Before the Court are the parties' cross-motions for summary judgment. (Docs. 64; 66). Also here are responses and reply briefs. (Docs. 68; 73; 74; 76). The Court dismisses without prejudice.

## BACKGROUND

This is a Hurricane Irma insurance dispute. The storm damaged Plaintiff Gulfside, Inc.'s property (the "Property"), which Defendant Lexington Insurance Company insured (the "Policy"). Right after Irma, Gulfside filed a claim, and the parties began investigating. For two years, they went back-and-

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

forth trying to agree on coverage and the value of Lexington's claim. Despite their efforts, they could not.

During the process, Lexington determined there was coverage for at least part of Gulfside's claim. But according to Lexington, the damage was around $530,000, less than Gulfside's deductible. Unsatisfied, Gulfside hired a public adjuster and evaluated the damage itself (the "Adjuster"). By April 2019, the parties agreed on the causation and value of damage to the Property's roof. Lexington paid part of the claim based on that agreement. With the issues on the other claimed losses still unresolved in July 2019, the Adjuster e-mailed Lexington a package with a sworn proof of loss for almost $13 million in damages. Also within that package was a letter—where Gulfside requested appraisal if Lexington disagreed with its loss calculations.[2]

Lexington responded appraisal was premature because it was still investigating. So it wanted reinspection of the property, an examination under oath ("EUO"), and a host of documents. After, another inspection occurred (the sixth overall). And the parties set the EUO, along with document production,

---

[2] While Gulfside contends it demanded appraisal a year earlier, the Court disagrees. At that time, Lexington notified Gulfside of its mediation rights. In response, the Adjuster sent this e-mail: "As you have offered Mediation, can we agree just to move forward with Appraisal?" (Doc. 66-12). This question falls short of invoking appraisal under the Policy. Gulfside apparently agreed then too as it made no effort to follow up by selecting its appraiser. To the extent that the parties dispute whether a state statute applies to surplus lines insurers (like Lexington), it does not. *Reynolds Ventures, Inc. v. Scottsdale Ins.*, No. 2:18-cv-306-FtM-29MRM, 2018 WL 4215947, at *3 (M.D. Fla. Sept. 5, 2018).

for September 2019. When those dates didn't work and the parties couldn't agree on another, Lexington unilaterally set the document production and EUO for November and December 2019, respectively. Before those dates, Gulfside sued. In the end, Gulfside never sat for the EUO. As a result, Lexington denied coverage entirely shortly after removing the case.

The Complaint seeks a declaratory judgment compelling appraisal and damages for a breach of contract. (Doc. 32). Earlier, Gulfside moved to compel appraisal, but the Court denied without prejudice. It held the general rule of compliance with post-loss conditions applied. What's more, resolving Gulfside's compliance with those conditions was premature given the undeveloped record and potentially dispositive nature. So now, each side moves for summary judgment.

## LEGAL STANDARD

Sitting in diversity, the Court applies Florida substantive and federal procedural law. *Global Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return

3

a verdict for the nonmoving party." *Id.* At this stage, courts must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

## DISCUSSION

Mostly, the parties dispute whether this case should go to appraisal or get dismissed. Lexington says Gulfside's failure to comply with certain post-loss conditions is fatal. On these facts, Gulfside thinks Lexington is making a mountain out of a molehill because compliance wasn't required.

Because interpretation of the Policy is necessary, a few principles are important to remember. An insurance policy is a contract. *Hegel v. First Liberty Ins.*, 778 F.3d 1214, 1219 (11th Cir. 2015). Like other contracts, Florida courts construe policies "according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. and Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). When "a policy provision is clear and unambiguous, it should be enforced according to its terms." *Garcia v. Fed. Ins.*, 969 So. 2d 288, 291 (Fla. 2007) (citation omitted). Courts can't "rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Intervest Constr. of Jax, Inc. v. Gen. Fid. Ins.*, 133 So. 3d 494, 497 (Fla. 2014) (citation omitted).

In Florida, "all post-loss conditions must be satisfied before a trial court can exercise its discretion to compel appraisal." *E.g.*, *State Farm Florida Ins. Co. v. Fernandez*, 211 So. 3d 1094, 1095 (Fla. Dist. Ct. App. 2017). A common,

enforceable post-loss condition is requiring the insured to sit for an EUO. *Biscayne Cove Condo. Ass'n v. QBE Ins.*, 971 F. Supp. 2d 1121, 1143-44 (S.D. Fla. 2013). There is good reason for such a requirement: "A provision in a policy requiring the insured to submit to [an EUO] regarding the loss is reasonable and valid, and if breached, the insurer would be deprived of a valuable right for which it had contracted." *Laine v. Allstate Ins. Co.*, 355 F. Supp. 2d 1303, 1305 (N.D. Fla. 2005) (citation omitted).

The Policy's plain language states Gulfside cannot sue Lexington unless "there has been full compliance with all of the terms of" the Policy. (Doc. 1-2 at 30). One post-loss duty provision provides for an EUO:

> b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records.

(Doc. 1-2 at 50-51). So Lexington had the right to demand an EUO as a post-loss condition. And this Court cannot disregard rights the parties contracted for. *People's Tr. Ins. v. Amaro*, No. 3D20-358, 2021 WL 1773698, at *4 (Fla. Dist. Ct. App. May 5, 2021).

Still, Gulfside argues Lexington waited too long to make those demands. As the argument goes, since Gulfside invoked appraisal first, everything that happened after with post-loss conditions is irrelevant for two reasons.

First, according to Gulfside, the Court must determine whether to compel appraisal before doing anything else. Not so. At a minimum, courts may decide whether to compel appraisal or decide coverage first. *Am. Capital Assurance Corp. v. Leeward Bar at Tarpon Bay Condo. Ass'n*, 306 So. 3d 1238, 1242 (Fla. Dist. Ct. App. 2020) (discussing a DCA split). And either way, a court "must make a preliminary determination as to whether the demand for appraisal is ripe" before doing so. *E.g.*, *Citizens Prop. Ins. v. Admiralty House, Inc.*, 66 So. 3d 342, 344 (Fla. Dist. Ct. App. 2011). "Until [post-loss] conditions are met and the insurer has a reasonable opportunity to investigate and adjust the claim, there is no 'disagreement' (for purposes of the appraisal provision in the policy) regarding the value of the property or the amount of loss." *Citizens Prop. Ins. v. Galeria Villas Condo. Ass'n*, 48 So. 3d 188, 191 (Fla. Dist. Ct. App. 2010). Here, it's undisputed Gulfside flouted some Policy requirements.

Second, much of Gulfside's position boils down to this: by invoking appraisal, Gulfside cutoff any obligation it had to comply with post-loss conditions. Yet it points to no law standing for that proposition. While Gulfside cites an unpublished state-court decision, it's distinguishable. (Doc. 35-1). There, the parties agreed to conduct appraisal (and had been doing so for six months) when insurer demanded an EUO. On those facts, the court held insurer could not undo its concession that insured complied with post-loss conditions when agreeing to appraisal. In other words, the insurer waived its

right to challenge compliance with the conditions. That was in line with some cases on the issue. *Safepoint Ins. v. Gomez*, 263 So. 3d 222, 223-24 (Fla. Dist. Ct. App. 2019) ("By invoking appraisal . . . [insurer] waived the requirement of compliance with post-loss obligations as a condition precedent to that appraisal."). Here, the parties did not agree to appraise the claim. Nor did they go to appraisal before Lexington requested an EUO.

What really undermines Gulfside's argument are cases showing it's wrong. One—with basically identical policy language—held insured's failure to sit for an EUO made appraisal unripe. *Vintage Bay Condo. Ass'n v. Lexington Ins.* (*Vintage Bay 1*), No. 2:18-cv-729-FtM-99CM, 2019 WL 211433, at *2-3 (M.D. Fla. Jan. 16, 2019). Insured invoked appraisal *before* insurer demanded an EUO. That's what happened here.

While factually different, a recent case is even more helpful. *SafePoint Ins. v. Hallet*, No. 5D20-206, 2021 WL 2599656 (Fla. Dist. Ct. App. June 25, 2021). There, the parties agreed to appraise. They went through the process for months before insurer demanded an EUO and reems of documents. Insureds sat for EUOs. Their public adjuster appeared too, but insurer then rescheduled his EUO to a day he was unavailable. So insurer denied the claim. Even so, the court held:

> [Insureds'] policy does not condition [insurer's] ability to garner post-loss information on the state or existence of the appraisal process. Instead, it directs

7

> that [insureds] may not sue [insurer] unless they have complied with "all of" the policy's terms. Furthermore, the policy's post-loss cooperation provisions are untethered from its appraisal provisions. The policy permits [insurer] to ask for post-loss information "as often as it reasonably requires." [Insureds] tacitly encourage us to add the language, "unless we have begun the appraisal process," to this provision. We cannot accept this invitation.

*Id.* at *3 (alterations accepted). The same holds true here. Nothing in the Policy limits Lexington's ability to impose post loss conditions after Gulfside invoked appraisal. Nor was the EUO request unreasonable in response to the Adjuster's e-mail. Lexington valued the claim far lower than the Adjuster. So its reaction to request an EUO was predictable.

Those cases clarify there is no rule (as Gulfside contends) that insureds invoking appraisal automatically cuts off insurers' ability to demand compliance with post-loss obligations. *See also Galindo v. ARI Mut. Ins.*, 203 F.3d 771, 773-74, 776-77 (11th Cir. 2000); *U.S. Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 468-69, 471 (Fla. Dist. Ct. App. 1999); *Treasure Cay Condo. Ass'n v. Frontline Ins. Unlimited Co.*, No. 4:19-10211-CV, 2021 WL 631885, at *2 (S.D. Fla. Feb. 16, 2021). To be sure, sometimes an insured's failure to comply with post-conditions is excused. *See, e.g.*, *Perez v. Brit UW Limited*, No. 1:19-cv-22024-JLK, 2021 WL 1430832 (S.D. Fla. Mar. 4, 2021); *Abdo v. Avatar Prop. and Cas. Ins. Co.*, 302 So. 3d 926 (Fla. Dist. Ct. App. 2020); *Willis v. Huff*, 736

8

So. 2d 1272, 1274 (Fla. Dist. Ct. App. 1999). Yet aside from frustration with the adjustment process, Gulfside offers no reason to excuse compliance.

Importantly, Gulfside's cooperation with Lexington's investigation for nearly two years does not excuse failing to sit for the EUO. *Edwards v. SafePoint Ins.*, 318 So. 3d 13, 19 (Fla. Dist. Ct. App. 2021). The Third DCA just made that clear:

> [Insured's] compliance on other matters, e.g., promptly reporting the claim, allowing [insurer] to inspect her home, and providing a sworn proof of loss, does not bear on whether [insured] substantially complied with the specific, pertinent policy provision requiring her to submit to an EUO. Stated differently, actual compliance with *other* policy requirements or conditions is not evidence of substantial compliance with the pertinent policy requirement or condition at issue—in this case the post-loss obligation that [insured] must sit for an EUO.

*Nunez v. Universal Prop. & Cas. Ins.*, No. 3D19-1614, 2021 WL 3377526 (Fla. Dist. Ct. App. Aug. 4, 2021) (table decision) (internal citations omitted).

In short, by refusing to sit for its EUO, Gulfside violated its post-loss conditions. To date, Gulfside neither remedied the defect nor offered to do so. Because Gulfside is in material breach, the Court cannot compel appraisal yet and denies Gulfside's Motion. *E.g.*, *Amica Mut. Ins. v. Drummond*, 970 So. 2d 456, 460 (Fla. Dist. Ct. App. 2007) ("Thus, [insured's] failure to submit to the EUOs was a material breach of a condition precedent to [insurer's] duty to provide coverage under the policy.").

When an insured does not comply with post-loss conditions, courts decide whether it results in forfeiture. With cases going different directions, the parties dispute whether a specific test should apply. *Am. Integrity Ins. v. Estrada*, 276 So. 3d 905 (Fla. Dist. Ct. App. 2019). *Estrada* permits an insured to avoid forfeiture if they can show a material breach did not cause insurer prejudice. *Id.* at 912, 914-16. Case law going the other way holds no prejudice is necessary when insured materially breaches a post-loss condition. *Goldman v. State Farm Fire Gen. Ins.*, 660 So. 2d 300, 306 (Fla. Dist. Ct. App. 1995). But the Court need not weigh in.[3] As described below, Gulfside sued prematurely and can perhaps remedy its breach. So neither dismissal with prejudice nor a forfeiture finding, as Lexington requests, is appropriate.

"Florida law abhors forfeitures." *Axis Surplus Ins. v. Caribbean Beach Club Ass'n*, 164 So. 3d 684, 687 (Fla. Dist. Ct. App. 2014); *Johnson v. Life Ins. Co. of Ga.*, 52 So. 2d 813, 815 (Fla. 1951). If Florida detests forfeitures, then it seems axiomatic an insured could—absent prejudice or contrary contractual language—remedy defects with post-loss condition compliance. *See, e.g.*, *Farmer*, 104 So. 3d at 1249-50 & 1249 n.10. Florida law is inconsistent on this point. But many courts agree "an insured may remedy any post-loss and pre-

---

[3] Recently, Judge Steele held *Estrada* applies. *SFR Servs., LLC v. Lexington Ins.*, No. 2:19-cv-229-FtM-29NPM, 2020 WL 3640540, at *6-7 (M.D. Fla. July 6, 2021); *see also New S. Commc'ns, Inc. v. Houston Cas. Co.*, 835 F. App'x 405, 411-13 (11th Cir. 2020).

filing obligations for appraisal after filing suit." *Diamond Lake Condo. Ass'n v. Empire Indem. Ins.*, No. 2:19-cv-547-FtM-38NPM, 2020 WL 9160865, at *4 (M.D. Fla. Sept. 30, 2020). Parties may even use discovery to cure defective compliance or outstanding obligations. *Id.*; *Triton Renovation, Inc. v. Empire Indem. Ins.*, No. 2:20-cv-432-JLB-NPM, 2021 WL 2291363, at *5 (M.D. Fla. June 4, 2021); *Scottsdale Ins. v. Univ. at 107th Ave., Inc.*, 827 So. 2d 1016, 1016-17 (Fla. Dist. Ct. App. 2002). But discovery is not a perfect shield for insureds to avoid their post-loss conditions. *Biscayne*, 971 F. Supp. 2d at 1136.

Here, Gulfside may have cured any issue with document production. Lexington seemed to get most (if not all) the documents it wanted during discovery. With the litigation production considered, it appears Gulfside substantially complied with that post-loss condition.

The EUO is another story. Gulfside refused to sit for the EUO. That EUO was scheduled before Gulfside sued—nearly two years ago. To date, Gulfside made no effort to meet the obligation. A corporate representative sat for a deposition, which is functionally like an EUO. But Florida law treats them different. *Goldman*, 660 So. 2d at 305; *Safeco Ins. Co. of Ill. v. Barthelemy*, No. 4D20-1045, 2021 WL 2947740, at *3 n.2 (Fla. Dist. Ct. App. July 14, 2021). And even if Gulfside's deposition would be relevant to any prejudice analysis, it cannot overcome the Policy's plan language. Lexington can demand an EUO, and Gulfside needed to substantially comply with post-

11

loss conditions before suing. Here, that has not happened. *See Shivdasani v. Universal Prop. & Cas. Ins.*, 306 So. 3d 1156, 1160 n.3 (Fla. Dist. Ct. App. 2020) ("It is unquestionable that in order for there to be substantial compliance, there must be evidence of some compliance.").

At bottom, Gulfside provides no reason to excuse its noncompliance. Nor can the Court disregard the Policy's plain language. All the same, nothing (besides perhaps the limitations period) prevents Gulfside from sitting for an EUO, producing any outstanding documents, and suing again.

Several decisions bear this out. The Fourth DCA—which decided *Goldman*—noted violating a condition precedent could be remedied post-suit. *Wright v. Life Ins. Co. of Ga.*, 762 So. 2d 992, 993 (Fla. Dist. Ct. App. 2000). In doing so, it reiterated "the proper remedy for premature litigation is an abatement or stay of the claim." *Id.* Still, since insured never sought that relief, dismissal without prejudice was appropriate. So insured could comply with the condition precedent and refile suit.

Likewise, a dissent is helpful. *State Farm Mut. Auto. Ins. v. Curran*, 135 So. 3d 1071 (Fla. 2014) (Polston, J., dissenting). In detail, then-Chief Justice Polston (joined by now-Chief Justice Canady) explained forfeiture is not preordained when insured fails to satisfy a condition precedent (e.g., a medical exam). *Id.* at 1082, 1085. Instead, he reasoned dismissal without prejudice was proper because insured merely sued too soon. *Id.* So insured could comply

with any outstanding post-loss obligations, then refile the action (provided the limitations period didn't run). Id. Where relevant, the Policy's language compels a similar conclusion.

No post-loss condition provisions dictate anything less than full compliance will void or forfeit coverage. Nor has Lexington pointed to any Policy language showing forfeiture occurred when Gulfside sued without complying. Tellingly, the Policy specifically voids coverage for certain conduct (like fraud and intentional concealment). (Doc. 1-2 at 30). Yet it does not do so for post-loss condition defects. In effect, Lexington asks the Court to read a forfeiture provision into the Policy. As above, however, the Court will not imagine terms on which the parties did not agree. To be sure, it appears some courts have done just that—creating a mind-boggling volume of EUO litigation. *Whistler's Park, Inc. v. Fla. Ins. Guar. Ass'n*, 90 So. 3d 841, 845 (Fla. Dist. Ct. App. 2012). Lost in the shuffle is the simple, forgotten purpose of an EUO: verifying insured's loss as part of insurer's investigation and ferreting out fraud. *Id.*

In short, forfeiture did not automatically follow Gulfside's EUO refusal. For that reason, many courts dismiss without prejudice or stay so insureds can fulfill pending conditions. *Compare Vintage Bay Condo. Ass'n v. Lexington Ins. (Vintage Bay 2)*, No. 2:18-cv-729-FtM-99UAM, 2019 WL 1149904, at *1 (M.D. Fla. Mar. 13, 2019) (staying to allow insured to comply with post-loss

13

conditions—including EUO), *with Phoenix Trinity Mfg. Co. v. Granite State Ins.*, No. 8:20-cv-419-T-23SPF, 2020 WL 5569514, at *2-3 (M.D. Fla. Sept. 17, 2020) (dismissing without prejudice to allow insured to comply with post-loss conditions—including EUO).[4]  So the question becomes which is appropriate?

In the typical case, the Court might be inclined to simply stay the action and allow Gulfside to comply with any outstanding post-loss conditions. Judge Steele recently did that twice. *SFR Servs., LLC v. Lexington Ins.*, No. 2:19-cv-229-FtM-29NPM, 2020 WL 3640540, at *7 (M.D. Fla. July 6, 2020); *Vintage Bay 2*, 2019 WL 1149904, at *1.  Here, however, Gulfside has not requested a stay.  The Court hesitates to inject itself into the litigation by granting unrequested (and unbriefed) relief.  *See Wright*, 762 So. 2d at 993.  What's more, Gulfside still mistakenly believes it need not comply.  At any point, Gulfside could have sought to stay and sat for the EUO. *Vintage Bay 2*, 2019 WL 1149904, at *1.  Instead, it neglected to remedy the defect for almost two years.  During that time, the parties litigated this exact issue through Gulfside's motion to compel appraisal, which should have put it on notice.

---

[4] *See also Southgate Gardens Condo. Ass'n v. Aspen Specialty Ins.*, 622 F. Supp. 2d 1332, 1336-37 (S.D. Fla. 2008); *Pena v. Citizens Prop. Ins.*, 88 So. 3d 965, 967-68 (Fla. Dist. Ct. App. 2012); *Johnston v. Lexington Ins.*, No. 5:19cv00097-MCR/MJF, 2019 WL 9628999, at *2 (N.D. Fla. June 12, 2019); *Cent. Metal Fabricators v. Travelers Indem. Co. of Am.*, 703 So. 2d 1251 (Fla. Dist. Ct. App. 1998); *U.S. Fid. & Guar. Co. v. Ziegler*, 771 So. 2d 1284, 1285 (Fla. Dist. Ct. App. 2000); *Langhorne v. Fireman's Fund Ins.*, 432 F. Supp. 2d 1274, 1278 (N.D. Fla. 2006).

In the end, the Court finds dismissal without prejudice is how to proceed. Provided the statute of limitations has not run—an issue on which the Court expresses no opinion—Gulfside can comply with any post-loss conditions, then refile suit. But until then, this action is premature.

Accordingly, it is now

**ORDERED:**

1. Defendant Lexington Insurance Company's Motion for Summary Judgment (Doc. 64) is **GRANTED in part**.

2. Defendant's Motion to Strike Plaintiff's Expert, Mark A. Boyle (Doc. 65) is **DENIED as moot**.

3. Plaintiff Gulfside, Inc.'s Motion for Summary Judgment (Doc. 66) is **DENIED**.

4. This action is **DISMISSED without prejudice**.

5. The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on August 6, 2021.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record