UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GULFSIDE, INC.,

    Plaintiff,

v.                                    Case No: 2:19-cv-851-SPC-MRM

LEXINGTON INSURANCE
COMPANY,

    Defendant.
_____/

### ORDER[1]

Before the Court are the parties' Motions for Reconsideration (Docs. 80; 82) and responses (Docs. 84; 86). This is an insurance case governed by an insurance policy (the "Policy"). Last month, the Court ruled on the parties' cross motions for summary judgment. It granted in part Defendant Lexington Insurance Company's motion and denied Plaintiff Gulfside, Inc.'s motion (the "Order"). Now, the parties each move for reconsideration. The Court grants reconsideration in part.[2]

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[2] After the parties filed these Motions, Gulfside filed a Notice of Appeal (Doc. 83). This does not divest the Court of jurisdiction to rule on the Motions. Fed. R. App. P. 4(a)(4)(B)(i); *Stansell v. Revolutionary Armed Forces of Colom.*, 771 F.3d 713, 745-46 (11th Cir. 2014).

## LEGAL STANDARD

Reconsideration under Rule 59(e) may be proper to correct "manifest errors of law or fact." *Jenkins v. Anton*, 922 F.3d 1257, 1263 (11th Cir. 2019). It may also be appropriate to account for intervening changes in law and newly discovered (or previously unavailable) evidence. *Banister v. Davis*, 140 S. Ct. 1698, 1703 n.2 (2020). And a 59(e) motion might fit "if there is a need to correct a manifest injustice." *E.g.*, *LLC SPC Stileks v. Rep. of Moldova*, 985 F.3d 871, 882 (D.C. Cir. 2021). Ultimately, the decision to reconsider "is committed to the sound discretion of the district judge." *United States v. Jim*, 891 F.3d 1242, 1252 (11th Cir. 2018) (citation omitted).

Motions for reconsideration are granted sparingly, and they are not chances to "relitigate old matters." *See Grange Mut. Cas. Co. v. Slaughter*, 958 F.3d 1050, 1059-60 (11th Cir. 2020) (citation omitted). Nor will courts "address new arguments or evidence that the moving party could have raised before the decision issued." *Banister*, 140 S. Ct. at 1703. "The burden is upon the movant to establish the extraordinary circumstances supporting reconsideration." *U.S. ex rel. Matej v. Health Mgmt. Assocs.*, 869 F. Supp. 2d 1336, 1348 (M.D. Fla. 2012) (citation omitted).

## DISCUSSION

To start, the Court tackles the issue on which the parties partially agree. Then, it turns to the other matters.

### A. Count 2

Both parties contend the Order should have ruled on summary judgment as it related to Gulfside's claim for breach of contract. After further review, the Court agrees—this claim is distinct from Count 1 (addressed below) and not subject to the same post-loss condition analysis. Count 2 alleged Lexington breached the Policy by not paying replacement cost value ("RCV") after Gulfside repaired its roof.

The parties seemingly agree that to get RCV, Gulfside must first complete repairs. (Doc. 32-1 at 47); *Buckley Towers Condo., Inc. v. QBE Ins.*, 395 F. Supp. 659, 663 (11th Cir. 2010). What's more, they agree Gulfside repaired the roof. (Doc. 68 at 19 ("Lexington's [sic] agrees that these documents provide evidence that the roof was completed.")). The parties, however, dispute when Gulfside notified Lexington of actually completed repairs, along with the amount spent. According to Lexington, repairs were not complete (or notice at least insufficient) until it received documentation in discovery. So Lexington says it could not have been liable for breach at the time of suit. Gulfside disagrees, pointing to paperwork it provided presuit.

Given the briefing, the Court concludes Gulfside is entitled to judgment on Count 2. Lexington seems to concede RCV is due or would be if Gulfside filed a breach claim now. Its only argument is that Gulfside's presuit documentation was not enough to establish completed repairs or the amount

3

spent. Yet repairs were undisputedly underway well before suit. And Gulfside sent Lexington substantial presuit evidence about complete repairs, including invoices and checks for amounts paid. While Lexington says this was not enough to conclude repairs were complete, no part of the Policy suggests Gulfside's notice was insufficient. If Lexington had an issue with the disclosure, it could have sought clarification. But Lexington presents no evidence of its response to the RCV disclosures or demand for more information.

Importantly, the only identified evidence on when repairs actually occurred shows they were presuit (in the summer of 2019). Lexington says repairs weren't complete until 2020 by pointing at a document showing final municipal certification of the roof four months after Gulfside sued. (Doc. 47-1). While this may be evidence of when the city approved the roof repairs, it says nothing about when they occurred.³ The Policy provides for RCV after "the lost or damaged property is actually repaired or replaced." (Doc. 32-1 at 47). A municipality need not approve the repairs under the Policy. Nor does it identify any specific documentation Gulfside needed to provide. Likewise, Lexington's argument on a released lien is unavailing. It allows no reasonable inference on when repairs happened. And it doesn't rebut Gulfside's evidence.

---

³ To the extent that this exhibit reflects when the repairs took place, it suggests the city's final roof inspection was in summer 2019. (Doc. 47-1 at 4).

4

What's more, even if repairs were not complete until March 2020, it would mean Gulfside filed Count 2 prematurely (i.e., before breach). Even if the RCV claim were unripe earlier, it isn't anymore. The parties agree Gulfside completed the repairs and now provides evidence to confirm. So under the Policy, RCV is due, and Lexington is now in breach for not paying.

Lexington cites nothing suggesting RCV claims becoming ripe during litigation should be dismissed with prejudice. The only law Lexington cites differs because those insureds never completed repairs. *Oriole Gardens Condo Ass'n I v. Aspen Specialty Ins.*, 875 F. Supp. 2d 1379, 1384-85 (S.D. Fla. 2012); *Save Money & Retain Temperature, LLC v. Lexington Ins.*, No. 18-61714-CIV-COHN/SELTZER, 2019 U.S. Dist. LEXIS 79797, at *11-13 (S.D. Fla. Mar. 13, 2019). Here, however, Gulfside finished repairs and now has the right to sue for RCV benefits. *See Garden Apartments, Inc. v. Chubb Custom Ins.*, No. 20-CV-23116-ROSENBERG, 2021 WL 3173251, at *4-5 (S.D. Fla. July 26, 2021) (dismissing RCV claim filed before repairs and noting the ruling doesn't "preclude the Plaintiff from initiating a new suit based upon actual cash value damages or, should the Plaintiff finalize repairs, replacement cost damages"); *Save Money*, 2019 U.S. Dist. LEXIS 79797, at *12 & n.4 (noting although insured couldn't recover RCV before making repairs, insurer "may become obligated to pay RCV in the future, once the repairs/replacements have been

completed"); *see also* [Breakwater Commons Ass'n v. Empire Indem. Ins., No. 2:20-cv-31-JLB-NPM, 2021 WL 1214888, at *4 (M.D. Fla. Mar. 31, 2021)](#).

In short, there is no genuine dispute and Gulfside is entitled to judgment on Count 2. So the Court grants each Motion in part. Having resolved that issue, the Court takes the rest of the Motions in turn.

## B. [Doc. 82](#)

Gulfside moves to reconsider on four other grounds. Before addressing those, it is necessary to emphasize the narrowness of Count 1. This was labelled "Declaratory Judgment Compelling Appraisal." ([Doc. 32 at 5](#)). And it sought an order declaring Lexington must comply with Gulfside's appraisal demand and compelling appraisal (along with any other necessary orders like appointing appraisers and confirming their award) ([Doc. 32 at 5-7](#)). All Gulfside wanted in Count 1 was to move forward with the appraisal process. The Order held because Gulfside ignored a condition precedent to suing, it had no right to file a complaint to compel appraisal as it was premature (unripe).

First, Gulfside contends it was error to focus on events after invoking appraisal rather than determine whether appraisal was ripe when invoked. The Order considered and rejected this argument. ([Doc. 78 at 5-9](#) ("Those cases clarify there is no rule (as Gulfside contends) that insureds invoking appraisal automatically cuts off insurers' ability to demand compliance with post-loss

6

obligations.")). So the Motion is denied on the first basis. *Slaughter*, 958 F.3d at 1059-60.

Second, Gulfside contends it was error not to find its deposition cured failing to sit for an examination under oath ("EUO"). Gulfside never argued the deposition cured noncompliance. So reconsideration is unnecessary. *Banister*, 140 S. Ct. at 1703. Even if it were, the Order explained how Florida law treats depositions and EUOs differently. So the Motion is denied on the second basis. *Slaughter*, 958 F.3d at 1059-60.

Third, Gulfside contends it would be error not to reconsider because Lexington won't schedule an EUO now. Even if it were appropriate to consider post-dismissal facts, Gulfside's delayed offer to sit for the EUO does not affect the Order's conclusion on ripeness. In part, the Court dismissed because Gulfside made no effort to comply with its obligation. Reconsideration is not the time to make new argument, including the tardy EUO bid. How the parties choose to proceed may be relevant to a potentially refiled suit. But it does not impact the holding Gulfside filed Count 1 prematurely and did not even offer to remedy its noncompliance until after dismissal. Gulfside must accept the consequences of its refusal. *See S. Home Ins. v. Putnal*, 49 So. 922, 932 (Fla. 1909) ("If the plaintiff saw fit to stand upon his rights as he conceived them to exist and to refuse to submit to the requested [EUO] and bring his action, he

must be held to have done so at his peril."). So the Motion is denied on the third basis. *Banister*, 140 S. Ct. at 1703.

And fourth, Gulfside contends it was error not to hold an evidentiary hearing. To be sure, Florida courts hold evidentiary hearings when there are factual disputes about compliance with post-loss obligations. *First Protective Ins. v. Ahern*, 278 So. 3d 87, 89 (Fla. Dist. Ct. App. 2019). But Gulfside's refusal to sit for an EUO was (and still is) undisputed. Because the Order held that was dispositive, there were no factual disputes to resolve—Gulfside plainly did not comply with a condition precedent. *See Nunez v. Univ. Prop. & Cas. Ins.*, No. 3D19-1614, 2021 WL 3377526, at *6 (Fla. Dist. Ct. App. Aug. 4, 2021). So the Motion is denied on the fourth basis. *Slaughter*, 958 F.3d at 1059-60.

For those reasons, Gulfside's Motion is denied in part.

## C. Doc. 80

Lexington moves to reconsider for two reasons.[4]

First, Lexington contends it was error to not grant its summary judgment motion in full (i.e., find Gulfside forfeited coverage and dismiss with prejudice). This has argument has several components.

To start, Lexington says the Order "[e]viscerates" Affirmative Defense 3. (Doc. 80 at 4). That is a coverage defense based on Gulfside's failure to sit for

---

[4] Two grounds (1 and 3) are addressed together. Ground 4 is addressed above.

the EUO. Yet the Order said nothing about Lexington's affirmative defenses upon refiling. It simply said, "nothing (besides perhaps the limitations period) prevents Gulfside from sitting for an EUO, producing any outstanding documents, and suing again." (Doc. 78 at 12); *see also* (Doc. 78 at 15). At no point did the Order opine on what affirmative defenses Lexington may raise in a hypothetical refiled action. And upon review, the Order does not "eviscerate" Lexington's potential defense.

Right now, Count 1 is dismissed without prejudice. Should Gulfside sit for an EUO and refile, Lexington could again raise an affirmative defense for noncompliance with post-loss conditions. At that point, the parties would need to litigate whether Gulfside's belated compliance with the Policy was substantial compliance. If not, Lexington would (at a minimum) get a presumption of prejudice. *Am. Integrity Ins. v. Estrada,* 276 So. 3d 905, 916 (Fla. Dist. Ct. App. 2019). Even if so, Lexington might still get a presumption of prejudice given the delay. *Hunt v. State Farm Fla. Ins.,* 145 So. 3d 210, 212 (Fla. Dist. Ct. App. 2014) ("However, if the insured complies with the policy's conditions precedent before filing suit, albeit in an untimely manner, the insurer is only relieved of its duties under the policy if it was prejudiced by the insured's breach. In such a scenario, prejudice to the insurer is presumed." (internal citation omitted)); *see also Kramer v. State Farm Fla. Ins.,* 95 So. 3d

9

303, 306-07 (Fla. Dist. Ct. App. 2012). Put simply, Lexington still has an arguable coverage defense on failing to sit for the EUO when requested.[5]

This brings up Lexington's next point: it hasn't offered to withdraw its post-suit coverage denial or invite Gulfside for an EUO. Those matters, however, are well beyond the scope of the Order. Again, Count 1 is narrowly limited to appraisal. But no court can grant that relief until there is at least some compliance with the EUO condition. *E.g.*, *State Farm Fla. Ins. v. Fernandez*, 211 So. 3d 1094, 1095 (Fla. Dist. Ct. App. 2017). The Order did not direct Lexington to allow Gulfside to sit for an EUO. It simply concludes appraisal—and thus Count 1—is premature until the EUO demand is resolved. Nor does the Order imply Lexington must withdraw its coverage denial. If it chooses, Lexington may stand on the denial, and Gulfside can respond as it sees fit. How the parties might proceed after dismissal does not impact the conclusion this claim was unripe.

Those matters segue into Lexington's overarching argument—it was error not to find forfeiture and dismiss with prejudice. Each attempt to poke holes in the Order's reasoning falls flat.

Lexington challenges the Court's reliance on a dissent—*State Farm Mut. Auto. Ins. v. Curran*, 135 So. 3d 1071 (Fla. 2014) (Polston, J., dissenting).

---

[5] As before, the Court expresses no opinion on the propriety of any defenses.

Confusingly, Lexington never discusses that dissent, instead contending the *Curran* plurality opinion differs. To be sure, the Court agrees. *Curran*'s plurality is not very persuasive here as it concluded a medical exam obligation was a condition subsequent. *Rodrigo v. State Farm Fla. Ins.*, 144 So. 3d 690, 692-93 (Fla. Dist. Ct. App. 2014). Yet the Order did not rely on that rationale; it focused on the dissent. In that opinion, Justice Polston explained the exam there was really a condition precedent and dismissal without prejudice should follow noncompliance. Because the EUO requirement here is a condition precedent too, the Order—applying the Policy's plain language—adopted Justice Polston's cogent reasoning.

As the Order explained, that rationale is not without support. Trying to make it seem so, Lexington hunts the Order's cited precedent for distinguishing characteristics. In the ways that matter, it finds none.

For instance, the Order relied on Judge Merryday's recent decision (*Phoenix Trinity Mfg. Co. v. Granite State Ins.*, No. 8:20-cv-419-T-23SPF, 2020 WL 5569514 (M.D. Fla. Sept. 17, 2020)). There, insurer demanded documents and reserved the right to an EUO. After, insured sued. So insurer set the EUO, which insured refused to attend. Lexington says *Phoenix* is different because it had no presuit failure to attend an EUO. Yet there was no such failure here either. While Lexington scheduled an EUO presuit, Gulfside sued before that date. And—like the *Phoenix* insured—Gulfside failed to attend the

11

EUO during suit. There is no meaningful difference between the cases. In fact, there's a stronger argument for this case being premature as Lexington scheduled the EUO before Gulfside sued. So the Order dismissed without prejudice like *Phoenix*.

There is no need to go case by case in this fashion because Lexington misses the point. The Order cited a string of cases for the proposition that courts regularly stay or dismiss without prejudice to allow a chance to fulfill outstanding post-loss conditions (if possible) when insured sued prematurely. In other words, forfeiture is not automatic when an insured disregards a condition precedent. While there may be minor factual differences between this case and others, the principle of law applies all the same.[6] Curiously, Lexington seemed to acknowledge this was a possibility in its summary judgment briefing. (Doc. 64 at 11-12 ("A condition precedent to an insurance policy is a clause 'that bars suit against the insurer until the insured complies

---

[6] The Order could have included many more cases supporting its disposition. *U.S. Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 471-72 (Fla. Dist. Ct. App. 1999) (en banc) (remanding with instructions to allow post-loss condition compliance when insureds ignored EUO demand and sued to compel appraisal); *Los Palacios II Condo. Ass'n v. Aspen Specialty Ins.*, No. 09-22952-CIV-UNGARO, 2010 WL 11505262, at *7 (S.D. Fla. Mar. 29, 2010) (holding dismissal without prejudice proper when insured refused to sit for an EUO demanded presuit); *Jacobs v. Nationwide Mut. Fire Ins.*, No. 97-1485-CIV, 2002 WL 34543222, at *7 (S.D. Fla. Sept. 10, 2002) (holding dismissal without prejudice proper when insured failed to substantially comply with EUO); *27th Ave. Invs., Inc. v. Aspen Specialty Ins.*, No. 08-20080-CIV, 2008 WL 3270811, at *3 (S.D. Fla. Aug. 8, 2008) (noting when faced with insured refusing post-loss conditions, many cases "dismissed the action without prejudice upon entry of summary judgment").

with the relevant policy provision.' *Wright v. Life Ins. Co. of Ga.*, 762 So. 2d 992, 993 (Fla. Dist. Ct. App. 2000).").

Again, Count 1 seeks to proceed with appraisal prematurely. And Lexington still points to no Policy language signifying Gulfside forfeited coverage by suing too soon. So the Order did not find a with-prejudice dismissal proper. This is in line with disposal of unripe actions in other contexts. *E.g.*, *Hosp. Corp. of Am. v. Lindberg*, 571 So. 2d 446, 449 (Fla. 1990) ("We therefore hold that, in medical malpractice actions, if a presuit notice is served at the same time as a complaint is filed [(i.e., condition precedent not met)], the complaint is subject to dismissal with leave to amend.").[7] There is nothing special about property insurance untethering it from general principles of Florida law—including the reluctance to dismiss premature actions with prejudice. In essence, Lexington wanted the Court to rule on a coverage defense to an unripe claim. Yet that puts the cart before the horse. Count 1 is premature, and Gulfside had no right to bring it under the Policy

---

[7] *See also Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1023 (Fla. 1979) (holding failure to allege compliance with statutory condition precedent "does not call for dismissal with prejudice," instead the complaint gets "dismissed with leave to amend"); *Shuck v. Bank of Am., N.A.*, 862 So. 2d 20, 24 (Fla. Dist. Ct. App. 2003) ("When abatement of a prematurely filed action is not appropriate, we think the better course is for the trial court to dismiss the action without prejudice instead of with prejudice."); *City of Coconut Creek v. City of Deerfield Beach*, 840 So. 2d 389, 393 (Fla. Dist. Ct. App. 2003) ("If there remains sufficient time to comply with the statutory [condition precedent], the action should be dismissed with leave to amend."); *McKane Family Ltd. P'ship v. Sacajawea Family Ltd. P'ship*, 211 So. 3d 117, 121 (Fla. Dist. Ct. App. 2017) (same); *Vest v. Travelers Ins.*, 753 So. 2d 1270, 1276 (Fla. 2000); *Neate v. Cypress Club Condo., Inc.*, 718 So. 2d 390, 392 (Fla. Dist. Ct. App. 1998); *Miami Fourth, LLC v. GC Lounge, LLC*, 137 So. 3d 1073, 1074 (Fla. Dist. Ct. App. 2014).

given the EUO noncompliance. Until the matter ripens, a forfeiture determination on the merits is unnecessary.

As the Order recognized, some cases support Lexington's argument. The Court simply disagreed and relied on a different line of cases. It should be noted, however, the precedent Lexington relies on stems from a single decision: *Goldman v. State Farm Fire Gen. Ins.*, 660 So. 2d 300 (Fla. Dist. Ct. App. 1995). But not even *Goldman* held noncompliance with a post-loss condition automatically decrees a forfeiture finding. The court specifically "considered the possibility of remanding" with instructions to allow insured a chance to sit for an EUO. *Id.* at 305. Ultimately, however, it "decline[d] to exercise this option." *Id. Goldman* reasoned insured could not cure the deficiency two years late because doing so "would satisfy neither the spirit nor intent of the policy conditions at issue." *Id.*

That's a far cry from saying Gulfside suing before sitting for an EUO automatically causes forfeiture—something "Florida law abhors." *See Axis Surplus Ins. v. Caribbean Beach Club Ass'n*, 164 So. 3d 684, 687 (Fla. Dist. Ct. App. 2014). If that were the law, *Goldman* would not have "considered the possibility" and "option" to remand for an EUO. *Goldman*, 660 So. 2d at 305. Forfeiture would be the answer without analyzing whether belated compliance satisfied the "spirit" or "intent" of the policy. *Id. Romay* confirms that reading. There, insurer demanded EUOs presuit, but insureds refused and sued to

14

compel appraisal. While the court ruled insureds needed to sit for the EUOs, it remanded for them to do so.[8]

So the Court stands by its conclusion dismissal without prejudice was proper. That decision was appropriate on these facts and supported by well-established principles:

> An insurance policy provision making the insured's compliance with the insurer's request for an [EUO] a condition precedent to filing an action against the insurer does not mean that the insured's failure to comply with such condition is an absolute bar to recovery but only acts to suspend a right to recovery until the [EUO] is held. Accordingly, where an [EUO] is a condition precedent to suit, an insured's failure to comply, without cause, breaches the policy and precludes an action on the policy, by providing an absolute defense, at least until the insured does comply with the condition. Under such circumstances, dismissal of the action is a proper remedy.

13A Couch on Insurance § 196:30 (3d ed. 2021) (footnotes omitted).

In coming to this conclusion, the Order relied on a state-court case: *Wright*, 762 So. 2d 992. There, insured violated a condition precedent before suing, and the Fourth DCA explained dismissal without prejudice was proper. Lexington's effort to distinguish *Wright* fall flat. It says the case is different because *Wright* only concerned a duties-after-loss clause, not a no-action

---

[8] The Court recognizes *Goldman* held compliance delayed by two years was too late; whereas *Romay* held compliance could occur at least a year later. The Court expresses no opinion on whether any sitting for the EUO in the future would substantially comply with the Policy. That is a determination left for the merits.

15

clause. In reality, *Wright* concerned both—the relevant post-loss condition contained a no-action clause. At any rate, here, that is a distinction without a difference. *See Southgate Gardens Condo. Ass'n v. Aspen Specialty Ins.*, 622 F. Supp. 2d 1332, 1336-37 (S.D. Fla. 2008) (explaining conflict between *Goldman* and *Wright* on similar facts and holding dismissal without prejudice proper).

In part, the Policy's no-action clause is what makes the EUO requirement a condition precedent in the first place. *E.g.*, *Allstate Floridian Ins. v. Farmer*, 104 So. 3d 1242, 1246 (Fla. Dist. Ct. App. 2012) ("Florida courts have consistently interpreted proof of loss obligations coupled with similar no-action clauses to be conditions precedent.").[9] The EUO requirement's plain language doesn't reveal it is a condition precedent—unless read alongside the no-action clause and considering the facts. *See Willis v. Huff*, 736 So. 2d 1272, 1273-74 (Fla. Dist. Ct. App. 1999). But if the no-action clause is irrelevant, as Lexington seems to suggest, it's unclear whether the Policy's EUO requirement

---

[9] *See also Soronson v. State Farm Fla. Ins.*, 96 So. 3d 949, 952 (Fla. Dist. Ct. App. 2012) (holding duties-after-loss and no-action clauses together make notice and proof-of-loss requirement conditions precedent); *Langhorne v. Fireman's Fund Ins.*, 432 F. Supp. 2d 1274, 1278 (N.D. Fla. 2006) ("Under Florida law a 'no action' clause in an insurance contract may operate as a condition precedent barring suit against the insurer until the insured complies with the relevant policy provisions."); 16A Couch on Insurance § 232:14 (3d ed. 2021) ("In many policies, conditions precedent are specifically made a bar to a suit on the policy by use of 'no-action' clauses."); *see also Amica Mut. Ins. v. Drummond*, 970 So. 2d 456, 459-60 (Fla. Dist. Ct. App. 2007); *Frist Home Ins. v. Fleurimond*, 36 So. 3d 172, 174 (Fla. Dist. Ct. App. 2010); *Goldman*, 660 So. 2d at 301, 304-05.

16

is a condition precedent at all.[10] This might make the EUO a condition subsequent—putting the case in a very different posture. *See Bankers Ins. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985) ("A failure to cooperate is a condition subsequent and it is proper to place the burden of showing prejudice on the insurer."). Of course, Lexington does not contend that is the case, and such a conclusion would go against the great weight of authority on the question.

Instead, the no-action clause was relevant to concluding the EUO provision was a condition precedent, and failure to comply made Count 1 premature. This has been the law in Florida for a century. *Putnal*, 49 So. at 932 (holding insured's refusal to sit for EUO means "such action is prematurely brought" based on a no-action clause); *see also Solano v. State Farm Fla. Ins.*, 155 So. 3d 367, 372 (Fla. Dist. Ct. App. 2014) (Warner, J., concurring).

And second, Lexington wants clarification on the Order's statement related to substantial compliance. As the parties know, the Court ordered significant document production. Some of that Lexington demanded presuit. Still, the Order did not rule Gulfside cured its post-loss condition deficiencies on document production as a matter of law. In dicta, the Order noted "Gulfside

---

[10] Tellingly, Lexington never really points to its own Policy, instead relying on broad statements of law from cases. Yet it is blackletter law "conditions precedent are not favored" in Florida. *Land Co. of Osceola Cnty., LLC v. Genesis Concepts, Inc.*, 169 So. 3d 243, 247 (Fla. Dist. Ct. App. 2015) (citation omitted). So "courts will not construe provisions to be such, unless required to do so by plain, unambiguous language or by necessary implication." *Id.* (citation omitted). It is the Policy language here (not in some other contract) that must make the EUO a condition precedent.

*may have* cured any issue with document production" because "Lexington *seemed* to get most (if not all) the documents it wanted during discovery." (Doc. 78 at 11) (emphasis added).  At most, the Court noted, "it *appears* Gulfside substantially complied." (Doc. 78 at 11) (emphasis added).  Given the clear EUO deficiency though, there was no need to resolve the other post-loss condition dispute.  The holding clarifies the Order did not find—as Gulfside contends and Lexington worries—document production was sufficient. (Doc. 78 at 12 ("All the same, nothing (besides perhaps the limitations period) prevents Gulfside from sitting for an EUO, *producing any outstanding documents*, and suing again." (emphasis added)).

Confusingly, Lexington chastises the Court for relying on a state-court case: *Sweeney v. Citizens Prop. Ins.*, 43 So. 3d 842 (Fla. Dist. Ct. App. 2010).  But the Order never cited that case.  If Lexington intended to distinguish a case the Court relied on (*Scottsdale Ins. v. Univ. at 107th Ave., Inc.*, 827 So. 2d 1016 (Fla. Dist. Ct. App. 2002)), the effort fails.

In *Scottsdale*, insured failed to produce documents requested before suing.  All the same, during discovery, insured produced the documents.  Because insurer received all the documentation it sought presuit, the Third DCA held an adequate exchange of information occurred.  So insured met its post-loss obligation and appraisal was not premature.  This case stands for the unextraordinary proposition that documents produced during discovery may—

18

based on the facts—cure failing to provide the documents presuit. *See also State Farm Fla. Ins. v. Cardelles*, 159 So. 3d 239, 240, 242 (Fla. Dist. Ct. App. 2015) (holding document production sufficient based (in part) on sworn proof of loss produced in litigation).

Again, the Order did not find an adequate exchange (i.e., substantial compliance). Rather, it noted Lexington received many documents sought to investigate the claim. Like above, however, there was no need to rule on the extent of Gulfside's compliance with this condition since Count 1 was obviously unripe given the EUO refusal.

For those reasons, Lexington's Motion is denied in part.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Reconsideration/Clarification and/or Relief (Doc. 80) is **GRANTED and DENIED in part** as described above.

2. Plaintiff's Motion for Reconsideration (Doc. 82) is **GRANTED and DENIED in part** as described above.

3. The Clerk is **DIRECTED** to enter an amended judgment. The amended judgment should reflect **Count 1 is DISMISSED without prejudice**. The amended judgment should be entered on **Count 2 in favor of Plaintiff and against Defendant**.

**DONE** and **ORDERED** in Fort Myers, Florida on September 22, 2021.

**SHERI POLSTER CHAPPELL**
**UNITED STATES DISTRICT JUDGE**

Copies:  All Parties of Record